[No. H001242. Sixth Dist. Sept. 30, 1986.]

RAYMOND A. CHAMBERLIN, Plaintiff and Appellant, v.
CITY OF PALO ALTO et al., Defendants and Respondents.

---

## COUNSEL

Raymond A. Chamberlin, in pro. per., for Plaintiff and Appellant.

Diane M. Lee, City Attorney, and Margaret A. Sloan, Senior Assistant City Attorney, for Defendants and Respondents.

---

## OPINION

**BRAUER, J.**—Raymond Chamberlin appeals from a judgment dismissing his petition for a writ of mandate following the sustaining of a demurrer without leave to amend. The demurrer was sustained on the ground that Chamberlin's action was barred by the doctrine of collateral estoppel and further that his petition did not state facts sufficient to constitute a cause of action. We find that the court erred in both respects and consequently we reverse the judgment.

### BACKGROUND

The controversy below revolves around the installation and operation of a neighborhood traffic control plan in a neighborhood known as Evergreen Park in Palo Alto. The traffic control plan consists of the construction of full and partial barriers across several streets in the neighborhood and the addition of two-way and four-way stop signs at most intersections. The plan was developed by the City of Palo Alto (City) in response to concerns expressed by residents of Evergreen Park. Its purpose is to reduce nonresidential through traffic and thereby protect and enhance the neighborhood's safety and serenity.

Chamberlin's writ petition challenged a resolution by the City council to implement the permanent traffic control plan based on the filing of a negative declaration of environmental impact. He claims that City's failure to file a full environmental impact report (an EIR) constituted a violation of the California Environmental Quality Act (Pub. Resources Code, § 21000 et

seq., CEQA) and California Administrative Code, title 14, section 15000 et seq. (the Guidelines).[1] This writ petition was Chamberlin's second challenge to the traffic plan; his first petition, filed some eight months earlier, had raised a similar objection to City's adoption of the plan on a trial basis. Since the relationship between these two actions is crucial to the determination of the collateral estoppel issue, we find it necessary to review briefly the sequence of events culminating in the sustaining of the demurrer to the second petition and the entry of judgment against Chamberlin.

In September of 1983, City ordered its staff to conduct a study and prepare a traffic control plan for Evergreen Park which would meet the objectives of reducing the number of non-neighborhood through trips, and slowing traffic on Park Boulevard, while at the same time causing minimum increase in traffic on surrounding streets and the least negative impact on local businesses. By means of a matrix balancing these four criteria, staff evaluated fifteen possible traffic control plans, and selected one which best met all needs. This plan was presented to the City council on October 18, 1983, along with a detailed report prepared by City's planning director and its assistant transportation engineer. The staff report included an "initial study" (also referred to as an "initial environmental assessment") as required by CEQA Guidelines section 15063. This study (83-EIA-109) determined that the project had no significant environmental impact and therefore recommended the filing of a negative declaration. The negative declaration was filed and the plan which staff had recommended (hereafter referred to as the "first trial plan") was adopted by City for a six-month trial period.

After six months the first trial plan was evaluated. This involved before-and-after traffic counts, a mailback survey soliciting comments from Evergreen Park residents and businesses, responses from the fire department, police department and other public services, and feedback from the Evergreen Park Neighborhood Association and the Palo Alto Bicycle Club. Staff analyzed the technical data and citizen input and ultimately recommended that City adopt a modified version of the first trial plan as the permanent plan. A second environmental assessment was prepared (84-EIA-71), which incorporated the earlier one and included some changes and additions. Staff found once again that no significant environmental impact resulted from the project and thus that no EIR was required.

The City council met in August of 1984 to review staff recommendations. At this meeting an ad hoc citizens' committee presented itself and asked

---

[1]A negative declaration is simply a brief statement describing the reasons why a proposed project will not have a significant effect on the environment (Pub. Resources Code, § 21064). An EIR, on the other hand, is a more formal report, the result of extensive study and public review. Its contents and preparation are carefully prescribed by CEQA and the Guidelines.

the council to continue the matter until the committee could submit its own proposals and work with staff on achieving a compromise plan. After several meetings between members of this committee and staff, two plans were proposed by the committee. Staff found that one of these (plan BB) would meet the initial criteria established by City; however, staff suggested several modifications which were agreed to by those committee members who were proponents of plan BB. This modified plan was called BB-1. A third "initial study" (84-EIA-89) was prepared. It analyzed those aspects of plan BB-1 which were different from the plan developed and recommended by staff, and otherwise incorporated the previous two studies. Staff found that "[t]he environmental impacts of the proposed alternative plan BB-1 will be similar to those which will occur as a result of the recommended trial traffic control plan." On the whole, however, it was expected that plan BB-1 would result in less reduction of through traffic and more adverse physical impact than the staff plan. Nonetheless, staff recommended that a negative declaration be filed if City chose to implement plan BB-1. When the council convened in September of 1984, it voted to adopt plan BB-1 on a five-month trial basis. This is the "second trial plan."

On October 1, 1984, in compliance with Public Resources Code section 21152 and Guidelines section 15075, City filed its "Notice of Determination" that a negative declaration was prepared in connection with the second trial plan. On October 31, 1984, Chamberlin filed his first petition for writ of mandate attacking City's action on the ground that an EIR should have been prepared. (Pub. Resources Code, § 21168.5, Guidelines, § 15064.) Hearings on this matter, superior court No. P45538, were held on December 10, 1984 and February 27, 1985. On May 14, 1985, judgment against Chamberlin was entered and on May 24, 1985, Chamberlin filed an appeal from the judgment (our No. H000760).

On May 28, 1985, the City council met to review staff's evaluation of the second trial plan. Staff had prepared yet another environmental assessment (85-EIA-31) in the event that City decided to approve the second trial plan, rather than the first trial plan, on a permanent basis. This study was identical in many respects to its immediate predecessor (84-EIA-89). The differences were due in part to staff's analysis of data and input received during the trial period, and in part to the fact that the plan would be permanent rather than temporary. The council voted to adopt the second trial plan as the permanent traffic control plan for Evergreen Park, with a minor change in the pattern of stop signs and some alterations in the design of the permanent barriers.

The City's notice of determination that a negative declaration had been prepared for this project was filed on June 3, 1985. On July 3, 1985,

Chamberlin filed his second petition for writ of mandate (superior court No. P46697) objecting to the City's decision to implement the permanent plan without preparing an EIR.

On July 25, 1985, City filed a demurrer to Chamberlin's second writ petition on the following grounds: 1) claims identical to those in the first petition challenging the environmental assessment of the second trial plan presented moot issues since the trial plan had been superseded by the permanent plan; 2) to the extent that Chamberlin realleged claims concerning the second trial plan, his cause of action was barred by CEQA's 30 day statute of limitations[2] running from October 1, 1984; 3) another action was pending between the same parties on the same cause of action, namely superior court action P45538, pending on appeal as Civil No. H000760 (Code Civ. Proc., § 430.10, subd. (c))[3]; and finally, 4) the petition did not state facts sufficient to constitute a cause of action.

On July 25, 1985, the same day on which City's demurrer was filed, this court dismissed Chamberlin's first appeal as moot on the ground that the second trial plan challenged by the petition no longer existed.

The superior court heard City's demurrer on August 8, 1985. On August 9, 1985, the court filed a minute order which read: "The court having taken judicial notice of Chamberlin vs. City of Palo Alto, Court of Appeal No. H000760, see order of dismissal dated July 25, 1985, sustains the demurrer of the defendant without leave to amend. In addition the court finds that the petition does not state facts sufficient to constitute a cause of action and (1) the alternative writ is discharged (2) the petition is dismissed." Judgment was entered on September 20, 1985, and on that same date a statement of decision was filed which reflected the court's conclusions that (1) Chamberlin's action repeated the allegations of his first petition, dismissed on appeal, and was therefore barred by collateral estoppel, and (2) the petition was legally insufficient in that it contained "speculative opinions but no facts."

---

[2]Public Resources Code section 21167, subdivision (b): "Any action or proceeding alleging that a public agency has improperly determined whether a project may have a significant effect on the environment shall be commenced within 30 days after the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152 by the lead agency."

[3]Code of Civil Procedure section 430.10 provides: "The party against whom a complaint or cross-complaint has been filed may object, by demurrer or answer . . . to the pleading on any one or more of the following grounds: . . . [¶] (c) There is another action pending between the same parties on the same cause of action."

## Issues

### 1. *Is This Action Barred by the Doctrine of Collateral Estoppel?*

■ The doctrine of collateral estoppel would preclude Chamberlin from litigating any of the same issues that had been finally litigated and determined in the first action. (*Perez* v. *City of San Bruno* (1980) 27 Cal.3d 875, 883 [168 Cal.Rptr. 114, 616 P.2d 1287]. The doctrine does not operate here.

Initially, the issues presented in the second action are not entirely the same as those raised by the first, for the reason that the first action concerned the trial plan while the second challenged the permanent plan. There are differences, albeit minor, between the configurations of the two plans. The major differences result from the fact that the second plan calls for the erection of permanent concrete barriers rather than temporary ones. Staff's two environmental assessments, 84-EIA-89 and 85-EIA-31 respectively, reflect these differences, indicating that more severe environmental impacts are likely to result from the permanent plan in the categories of water, plant life, noise, public services and storm water drainage. Collateral estoppel does not apply where the issue previously litigated was not identical. (*Jackson* v. *City of Sacramento* (1981) 117 Cal.App.3d 596, 602 [172 Cal.Rptr. 826]; *Solari* v. *Atlas-Universal Service, Inc.* (1963) 215 Cal.App.2d 587, 599 [30 Cal.Rptr. 407].)

Even more importantly, the issues raised in the first action were not finally litigated and determined since the appeal was dismissed as moot. "'Where a party to a judgment cannot obtain the decision of an appellate court because the matter determined against him is . . . moot, the judgment is not conclusive against him in a subsequent action on a different cause of action.'" (*Minor* v. *Lapp* (1963) 220 Cal.App.2d 582, 584 [33 Cal.Rptr. 754].) The environmental assessment of the permanent plan incorporates by reference the assessment of the trial plan to the extent that it is the same. Therefore, Chamberlin's objections to those aspects of the trial plan which are identical to, and included in, the permanent one are properly raised in this action; otherwise the dismissal would operate to deprive him forever of the opportunity to litigate these issues.

Two corollary arguments raised by City's demurrer, but not expressly relied upon by the court, require brief mention here. City claims that all of those allegations which are repeated from the first petition are moot because

the temporary plan no longer exists. This was a winning argument in City's motion to dismiss the first appeal. It cannot, however, be applied to the case at bar which disputes the adoption of the permanent plan rather than the temporary one. City takes the position that the permanent plan as a whole is not a separate "project" under CEQA, thus attempting to limit Chamberlin's challenge to those parts of the final environmental assessment which address only the permanency aspect of the traffic plan. As we discussed above, this last environmental assessment expressly incorporates and includes the previous studies. Therefore, Chamberlin's challenge encompassing all aspects of City's review of the final traffic plan is entirely fitting here. Indeed the approach suggested by City would result in precisely the sort of "piecemeal" environmental litigation prohibited by our Supreme Court in *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263 [118 Cal.Rptr. 249, 529 P.2d 1017].

Finally, City's argument that the 30-day statute of limitations should run from the filing of the notice of determination as to the second trial plan is likewise unmeritorious. The present action takes issue with the notice of determination filed by City on June 3, 1985. Chamberlin's petition, filed July 3, 1985, was timely.

### 2. *Does the Petition State a Cause of Action?*

■ Chamberlin's petition is brought under Public Resources Code section 21168.5, which provides: "In any action . . . to attack . . . a determination . . . of a public agency on the grounds of noncompliance with this division, the inquiry shall extend only to whether there was a prejudicial abuse of discretion. . . ." When, as here, an agency has approved a project based upon a negative declaration rather than an EIR, such abuse of discretion is established where petitioner can show 1) that the agency had before it substantial evidence of the project's potential negative impact on the environment or 2) that the agency otherwise did not proceed in a manner required by law. (Pub. Resources Code, § 21168.5; *Brentwood Assn. for No Drilling, Inc.* v. *City of Los Angeles* (1982) 134 Cal.App.3d 491 [184 Cal.Rptr. 664].)

■ The petition alleges that City filed its negative declaration in the face of 1) public controversy over the environmental effects of the project as evidenced by responses from Palo Alto residents and citizens' groups; 2) evidence that increases in vehicular starting, stopping and low-speed travel would unfavorably affect the emission of pollutants and the ambient

noise level; 3) the conceded negative impact on the effectiveness of police and fire protection which cannot be fully mitigated; 4) increased maintenance problems for which City is unable to provide manpower; 5) disagreement among experts as to the significance of the environmental impact; and 6) the availability of alternative solutions to the traffic problem.

The sufficiency of these allegations must be viewed in light of the rules determining when preparation of an EIR is mandatory. ██ Public Resources Code section 21080, subdivision (c), provides that an agency may file a negative declaration only when there is no substantial evidence before it that the project may have a significant effect on the environment. Substantial evidence in this context has come to mean any evidence which supports a "fair argument" that the project may have "significant environmental impact." (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 74 [118 Cal.Rptr. 34, 529 P.2d 66]. The case of *Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988 [165 Cal.Rptr. 514] stated the test in this way: "[I]f a local agency is required to secure preparation of an EIR 'whenever it can be *fairly argued* on the basis of substantial evidence that the project may have significant environmental impact' [citation], then an agency's adoption of a negative declaration is not to be upheld merely because substantial evidence was presented that the project would not have such impact. The . . . court's function is to determine whether substantial evidence supported the agency's conclusion as to whether the prescribed 'fair argument' could be made. If there was substantial evidence that the proposed project might have a significant environmental impact, evidence to the contrary is not sufficient to support a decision to dispense with preparation of an EIR and adopt a negative declaration . . . ." (*Id.,* at p. 1002, italics in original.)[4]

██ On appeal from a judgment of dismissal based upon an order sustaining a demurrer without leave to amend, we must accept as true all allegations of material facts. (*Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 734 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39].) In so doing we find that the allegations set forth above establish the requisite fair argument of possible environmental impact. Whether these allegations can be supported at trial by evidence contained in the administrative record is another matter, not determinable at the demurrer stage nor by us on this appeal.

The court erred in sustaining the demurrer without leave to amend on the grounds that the petition did not state a cause of action and was barred by collateral estoppel.

[4]It is for the Legislature and not this court to say whether the *Friends of "B" Street* test complies or conflicts with the legislative intent.

We reverse the judgment. Costs on appeal to appellant.

Agliano, P. J., and Simmons, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.