[No. E047624. Fourth Dist., Div. Two. Aug. 25, 2011.]

COALITION FOR A SUSTAINABLE FUTURE IN YUCAIPA, Plaintiff and Appellant, v.
CITY OF YUCAIPA et al., Defendants and Respondents;
TARGET STORES, INC., et al., Real Parties in Interest and Respondents.

## COUNSEL

Leibold McClendon & Mann, John G. McClendon and Alisha M. Winterswyk for Plaintiff and Appellant.

Richards Watson & Gershon and Ginetta L. Giovinco for Defendants and Respondents.

Holland & Knight and Amanda J. Monchamp for Real Party in Interest and Respondent Target Stores, Inc.

No appearance for Real Party in Interest and Respondent Palmer General Corporation.

## Opinion

**RAMIREZ, P. J.**—Coalition for a Sustainable Future in Yucaipa (Coalition) appeals from a judgment denying its petition for writ of mandate. The petition challenged a shopping center approved by respondents City of Yucaipa and its city council (jointly, City) and proposed by respondent and real party in interest Target Stores, Inc. (Target), on land owned by respondent and real party in interest Palmer General Corporation (Palmer). The principal ground of the petition was that the project conflicted with affordable housing requirements, but it also alleged failures to properly consider and deal with greenhouse gas emissions, urban decay effects, and traffic impacts. Appellant's opening brief focuses on the affordable housing and greenhouse gas issues.

## FACTS

Prior to the filing of a respondents' brief, City and Target moved to dismiss the appeal on the ground of mootness, and Coalition opposed the motions. The motions were denied without prejudice to reconsideration by the panel deciding the case; however, the court took up the issue again, and after further letter memoranda, determined that the appeal had been rendered moot.

The mootness determination was based on events subsequent to the filing of the appeal.[1] Target and Palmer abandoned the project because of litigation between them over a claimed breach of contract respecting the project. City rescinded the resolutions approving the project, a general plan amendment necessary to the project, and the certification of the environmental impact report for the project, all of which occasioned the litigation resulting in this appeal and were its sole subjects.

The court has considered appellant's and respondents' letters both filed April 19, 2010, pursuant to the order filed March 30, 2010. That order suggested the appropriate disposition of the appeal would be reversal of the judgment appealed solely to restore jurisdiction to the superior court to dismiss the action. (Cf. *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134–135 [41 Cal.Rptr. 468, 396 P.2d 924] (*Paul*).) The court considered the disposition appropriate in view of respondents' abandonment of the project and City's rescissions. Although appellant naturally approved the proposed

---

[1] The court takes judicial notice of these events using the copies of documents and declarations attached to Target's motion to dismiss filed September 18, 2009, Coalition's opposition and judicial notice request both filed October 2, 2009, City's motion to dismiss filed October 15, 2009, and Coalition's opposition filed October 30, 2009. (Evid. Code, § 459.)

disposition, respondents objected on the grounds that (1) the case had not been rendered moot "in a manner that rendered the Superior Court's decision erroneous" and (2) "there is no outstanding relief that would be rendered improper by this Court's determination of mootness." In support of the second ground, respondents distinguished two cases in which the *Paul* disposition was used to vacate judgments granting injunctions that were no longer proper.

## DISCUSSION

To justify our use of the *Paul* disposition in this case, we will first look at *Paul* to see why the Supreme Court reversed with directions to dismiss. We will then address respondents' attempted distinctions.

In *Paul*, Creamcrest Dairy Products Company (Creamcrest), the predecessor of Milk Depots, Inc. (Milk Depots), and a milk distributor as opposed to a milk producer, sold milk for the lesser producer's price in violation of the minimum price set by a regulation of Director of the California Department of Agriculture Charles Paul (State). State sued to enjoin Creamcrest and recover civil penalties. The superior court rendered judgment in favor of Creamcrest, finding the regulation unauthorized by the statute under which it was promulgated. Subsequently, Creamcrest went bankrupt and Milk Depots substituted in. State appealed. (*Paul, supra*, 62 Cal.2d at pp. 130–131.)

While the appeal was pending, Creamcrest's distributor's license was revoked on other grounds, and Creamcrest ceased doing business and sold its physical plant to Milk Depots. A new regulation superseded the old regulation and omitted the producer/distributor price differential that the judge had found unauthorized. The Supreme Court held that the issues of the injunctive relief and even the civil penalties (which would have survived bankruptcy) were mooted by Creamcrest's status as an insolvent corporation with no assets. (*Paul, supra*, 62 Cal.2d at pp. 132–133.) Furthermore, although the public interest in the correctness of the trial court's invalidation of the producer/distributor price differential might have justified ignoring the mootness of the case as to the parties to reach an important legal question, the effective repeal of the old regulation removed that question from consideration. (*Id.* at pp. 133–134.)

■ The Supreme Court then took up the issue of the proper disposition. The court noted that the usual disposition of a moot appeal is dismissal. (*Paul, supra*, 62 Cal.2d at p. 134.) The problem with dismissal in *Paul* was that " '[t]he dismissal of an appeal is in effect an affirmance of the judgment . . . .' " (*Ibid.*) The court then wrote, "As *we do not reach the merits of the appeal* in the case at bench, *it is appropriate to avoid thus 'impliedly' affirming a judgment* which holds unconstitutional a regulation of the Director of Agriculture promulgated pursuant to the Milk Stabilization Act. *Since the basis for that judgment has now disappeared we should 'dispose of the case, not merely of the appellate proceeding which brought it here.'* [Citation.] That result can be achieved by reversing the judgment solely for the purpose of restoring the matter to the jurisdiction of the superior court, with directions to the court to dismiss the proceeding. [Citations.] Such a reversal, of course, does not imply approval of a contrary judgment, but is merely a procedural step necessary to a proper disposition of this case." (*Id.* at pp. 134–135, italics added.) The Supreme Court disposed of the case as follows: "In the main appeal [(case number)] the judgment is reversed and the cause remanded for the purpose of restoring the matter to the jurisdiction of the superior court, with directions to dismiss the action as moot." (*Id.* at p. 135.)

The judgment in *Paul* had two problems. The first problem was that "the basis for th[e] judgment" had "disappeared"—the regulation had been superseded and Creamcrest was defunct. (*Paul, supra,* 62 Cal.2d at pp. 132–134.) Thus, there was neither justification for an injunction to enforce a superseded regulation nor an entity on which to impose civil penalties; there was no longer an actual controversy, and the case was moot. (*Ibid.*) The second problem was that the judgment's merits had not been fully and finally litigated and never would be because the judgment was moot. (*Ibid.*) By becoming moot, the judgment had escaped appellate review. A trial court judgment rendered moot on appeal and dismissed has not been fully litigated in the sense that the appellate review begun on the merits was never completed. Nevertheless, this less than fully litigated judgment may have a continuing preclusive effect on subsequent litigation—appellate courts have disagreed as to whether such a judgment may or may not be considered final so as to have res judicata or collateral estoppel effect. (See, e.g., *Chamberlin v. City of Palo Alto* (1986) 186 Cal.App.3d 181, 187 [230 Cal.Rptr. 454] (*Chamberlin*) [not final];[2] but cf. *Lyons v. Security Pacific Nat. Bank* (1995) 40

[2] "[T]he issues raised in the first action were not finally litigated and determined since the appeal was dismissed as moot. ' "Where a party to a judgment cannot obtain the decision of an appellate court because the matter determined against him is . . . moot, the judgment is not conclusive against him in a subsequent action on a different cause of action." ' (*Minor* v. *Lapp* (1963) 220 Cal.App.2d 582, 584 [33 Cal.Rptr. 864].)" (*Chamberlin, supra,* 186 Cal.App.3d at p. 187.)

Cal.App.4th 1001, 1017–1018 [48 Cal.Rptr.2d 174] (*Lyons*) [final];[3] see also Rest.2d Judgments, § 28, com. a, p. 274 [affirming nonfinality for issue preclusion purposes while noting possible difference in treatment of judgments rendered moot pending appeal in state and federal courts].)

The question faced in *Paul* was what should the disposition of the appeal be from a judgment with these problems? A dismissal of the appeal was inappropriate twice over. Since the judgment's merits had not been fully litigated, the affirmance implied by a dismissal of the appeal was unjustified. Since the case itself, not just the appeal, had been rendered moot by the disappearance of the basis for the judgment, a mere dismissal of the appeal failed to address the mootness of the case underlying the appeal. However, justifying a reversal was problematic because the reversal implied that the judgment was erroneous when the merits of the judgment had not been finally litigated. Furthermore, the reversal of the judgment would imply that additional proceedings should take place in the trial court, which would be inappropriate in view of the case's mootness. The advantage of a reversal over a dismissal was threefold: (1) a reversal could include directions to dismiss the underlying case; (2) a reversal vacated the judgment so the court had jurisdiction to follow the directions and dismiss the case; and (3) reversal itself ensures that the judgment can have no issue preclusive effect.[4]

Furthermore, the reversal could be qualified so as not to imply that the judgment was in error, only moot. Thus, a qualified reversal would remove any implication that the less than fully litigated judgment had any continuing validity or effect and afford a vehicle for directing the trial court to dismiss the underlying action. This is exactly the course taken by the Supreme Court in *Paul*. (*Paul, supra*, 62 Cal.2d at pp. 134–135.)

▇ *Paul*'s analysis and disposition also fit this case. First, just as the basis for the judgment in *Paul* had disappeared (the regulation and Creamcrest), so has the basis for the judgment in this case disappeared (the project). Second,

---

[3] *Lyons* distinguished *Minor v. Lapp*, in which the appeal was dismissed without prejudice to be certain to preclude the judgment from having any res judicata effect, while the appeals in *Lyons* and *Chamberlin* were dismissed with no mention of prejudice. (*Lyons, supra*, 40 Cal.App.4th at p. 1018.)

[4] We need not resolve the previously described issue of whether the dismissal of an appeal as moot renders the underlying judgment final for purposes of res judicata or collateral estoppel, because reversal of the judgment ensures that it does not. (See *Saller v. Crown Cork & Seal Co., Inc.* (2010) 187 Cal.App.4th 1220, 1237–1238 [115 Cal.Rptr.3d 151] ["The effect of an unqualified reversal is to vacate the judgment . . . as if . . . no judgment had been entered."], citing *Regents of University of California v. Public Employment Relations Bd.* (1990) 220 Cal.App.3d 346, 356 [269 Cal.Rptr. 563] [administrative decision does not become final for res judicata purposes if it is reversed].)

just as the case in *Paul* had been rendered moot before the judgment could be fully litigated, so has the case underlying this appeal been rendered moot before the judgment could be fully litigated. Just as it is "appropriate to avoid . . . 'impliedly' affirming a judgment which" delegitimizes a regulation that no longer exists, so it is "appropriate to avoid . . . 'impliedly' affirming a judgment which" legitimizes a project that no longer exists. (*Paul, supra,* 62 Cal.2d at p. 134.) Thus, the appropriate disposition of this case is the same as in *Paul.* A reversal should be used as the vehicle to vacate the judgment and deliver instructions to the superior court to dismiss the underlying action as moot. The disposition should make clear that the reversal of the judgment is not based on its merits, but based on its mootness.

Returning to respondents' objections, they now appear to be based on a misunderstanding of *Paul.* Respondents' objections were that (1) the case had not been rendered moot "in a manner that rendered the Superior Court's decision erroneous" and (2) "there is no outstanding relief that would be rendered improper by this Court's determination of mootness." In response to the first objection, the Supreme Court in *Paul* was unconcerned with the merits. The Supreme Court's concerns were that the basis for the judgment had disappeared rendering the underlying case moot and that a dismissal would imply an affirmance of a judgment that had not been fully litigated. Neither of these concerns related to whether the judgment was erroneous—it may well have been correct—the court never decided that question. The response to the second objection is that the Supreme Court was concerned with the propriety of the denial of injunctive relief by the judgment in *Paul* only in the sense that the propriety of that denial was not fully litigated. We have the same concern here; the propriety of the project was never fully litigated and, for that reason, the judgment should not stand.

As indicated above, we are not persuaded by respondents' efforts to distinguish *Paul* from this case. We are similarly not persuaded by respondents' efforts to distinguish the other two: *Lee v. Gates* (1983) 141 Cal.App.3d 989 [190 Cal.Rptr. 682] (*Lee*) and *National Assn. of Wine Bottlers v. Paul* (1969) 268 Cal.App.2d 741 [74 Cal.Rptr. 303] (*Bottlers*). In both cases respondents seek to distinguish the use of the *Paul* disposition on the ground that the present judgment appealed "has been rendered moot, but not in a manner that rendered the Superior Court's decision erroneous." However, as in *Paul,* the courts' concern in *Lee* and *Bottlers* was not that the judgments in the cited cases were "erroneous," a characterization not used in those cases,

but the concern was that the judgments would stand without having been fully litigated on the merits.

In *Lee*, the plaintiffs obtained preliminary injunctions barring the enforcement of municipal code sections that were later determined to be unconstitutional in another case, and the City of Los Angeles appealed. (*Lee, supra*, 141 Cal.App.3d at pp. 991–992.) However, the unconstitutional municipal code sections had not been repealed and, theoretically, could be enforced, justifying the continuing restraint afforded by the injunctive relief granted in the judgment appealed. (*Id.* at p. 993.) Nevertheless, the court noted that the appellant had "in good faith discontinued prosecuting and . . . there is no indication that the acts will probably recur." (*Id.* at p. 994.) The court held that the case holding the municipal code sections unconstitutional had "so changed circumstances that it is unnecessary to grant an injunction," and disposed of the appeal by reversing the judgment "with directions to the superior court to dismiss." (*Ibid.*)

We recognize that taken out of this context, the statement of the law in *Lee*, citing *Paul*, could be considered to require the moot judgment to be "erroneous" before it should be reversed: "Where the action itself is moot, *and the judgment was improperly rendered below*, dismissal of the appeal operates as an affirmance of the judgment, and therefore the correct order is reversal of the judgment with directions to the lower court to dismiss the action." (*Lee, supra*, 141 Cal.App.3d at p. 992, italics added.) However, the judgment in *Lee* can in no way be considered "improper" in the sense of being "erroneous" or incorrect—enjoining the enforcement of an unconstitutional municipal code section cannot be considered wrong or mistaken. Indeed, the court in *Lee* had affirmed the judgment appealed granting the injunctive relief, after which the appellant city's petition for review was granted and the appeal transferred back to the *Lee* court for decision in light of the case declaring the municipal code sections unconstitutional, which affirmed the grounds on which the injunctive relief had been granted while, at the same time, rendering the injunctive relief moot. (*Id.* at pp. 991, 992.) There was nothing wrong on the merits with the judgment or the relief granted other than the fact that the judgment had not been fully litigated. The injunction was harmless because the appellant had no intent of performing an enjoined act. Thus *Lee* cannot be considered support for respondents' contention that the moot judgment must be "erroneous" or the outstanding relief "improper" before it can be reversed with a direction to dismiss the action.

In *Bottlers*, the judgment enjoined the enforcement of marketing orders against the plaintiffs on the ground that they exceeded the authority of the same Director of the Department of Agriculture who was the subject of *Paul*. (*Bottlers, supra*, 268 Cal.App.2d at pp. 742–743.) After the appeal was filed, the orders were rescinded. (*Id.* at p. 743.) The problem with a dismissal was that "the injunction issued by the superior court would become viable again and would in effect be an affirmance of the judgment . . . ." (*Id.* at p. 747.) The court paraphrased and cited *Paul*, except it quoted *Paul* as to the prohibition of any inference that the reversed judgment was "erroneous": " 'Such a reversal, of course, does not imply approval of a contrary judgment, but is merely a procedural step necessary to a proper disposition of this case.' (*Paul* v. *Milk Depots, Inc., supra*, 62 Cal.2d 129, 135.)" (*Bottlers*, at p. 747.) Again, there was nothing wrong on the merits with the judgment or the relief granted. The injunction was harmless because the marketing orders enjoined no longer existed or were being enforced. Thus, respondents cannot support a simple dismissal in this case by contrasting the judgment in *Bottlers* as "erroneous" or the relief "improper."[5]

We conclude that the appropriate disposition in this case is the one used in *Paul*.

## DISPOSITION

The judgment is reversed as moot. This reversal does not imply that the judgment was erroneous on the merits, but is solely for the purpose of returning jurisdiction over the case to the superior court by vacating the otherwise final judgment solely on the ground of mootness. The superior court is directed to dismiss the underlying action as moot.

---

[5] Respondents mentioned a number of other cases in briefing and other correspondence. Supporting dismissal as the ordinary and appropriate disposition for a moot appeal, respondents cite *Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557, 1560 [92 Cal.Rptr.3d 219], and *Sorensen v. Coddington* (1926) 79 Cal.App. 199, 201–203 [249 P. 37]. Explaining the *Paul* disposition as a procedural mechanism for dealing with moot appeals, respondents cite *San Bernardino Valley Audubon Society v. Metropolitan Water Dist.* (1999) 71 Cal.App.4th 382, 404 [83 Cal.Rptr.2d 836] (Fourth Dist., Div. Two), which used the *Paul* disposition because the judgment was erroneous, and *County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1005–1006 [78 Cal.Rptr.2d 272], which discusses a *Paul* disposition to avoid affirmance but ultimately decides the moot issue. These cases do not require further comment because they do not add to the discussion of the grounds for the *Paul* disposition beyond that included in the cases already examined.

The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).) The remittitur will issue on or after 60 days following the filing of the opinion unless the parties stipulate to the earlier issuance of the remittitur. (Cal. Rules of Court, rule 8.272(b)(1)(A), (c)(1).)

McKinster, J., and Miller, J., concurred.