Filed 9/22/21  Marriage of Tearse CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re the Marriage of ANNE and JAMES TEARSE. | |
| ANNE TEARSE,<br>    Appellant,<br>v.<br>JAMES TEARSE,<br>    Respondent. | A158582<br><br>(San Mateo County Superior Court Case No. FAM-0122314) |

Today we file the sixth and seventh appellate opinions resulting from this long-running, intensely litigated marital dissolution proceeding between Anne and James Tearse.[1]  In this one, Anne seeks review of the trial court's orders issuing a writ of possession to James for the marital residence, ordering her to vacate the property, and denying her requests for attorney fees and costs (Fam. Code, § 2030 et seq.).[2]

Anne contends the trial court lacked jurisdiction to enter the writ of possession or the order to vacate.  We disagree but conclude that stipulations

---

[1] We use first names for purposes of clarity.  No disrespect is intended.

[2] All further undesignated statutory references are to the Family Code.

reached by the parties during the pendency of the appeal render Anne's appellate challenge to these orders moot.[3] With respect to the denial of attorney fees and costs, we agree with Anne's contention that the trial court failed to make the requisite findings under section 2030 to support its decision. We shall therefore remand for further consideration of that issue.

## I. BACKGROUND

### A. *The Original Judgment Following Trial*

On June 13, 2019, following trial, Judge Elizabeth Hill entered judgment pursuant to a detailed statement of decision.[4] The statement of decision directed the sale and conveyance of the marital residence located at 205 W. Floresta Way in Portola Valley. At the time of trial, Anne was living at the 205 W. Floresta Way property with the parties' minor daughter and wished to remain there until the minor daughter graduated high school.

The trial court awarded the property to James and ordered James to make an equalization payment to Anne for her share of the equity in the house. The property award required James to obtain financing for that payment and to assume Anne's portion of the mortgage debt within 60 days of the entry of judgment.

In the event James failed to meet the 60-day deadline, the trial court issued the following contingent orders: "Should he be unable to do so within 60 days of entry of judgment, the Court orders the marital residence to be

---

[3] In an order filed on July 15, 2021, we granted James's request that we take judicial notice of the Findings and Order After Hearing dated January 12, 2021, including a missing page provided by counsel. In addition, we accepted the Declaration of James Tearse dated February 28, 2021, as evidence on appeal pursuant to Code of Civil Procedure section 909.

[4] In an order filed on April 14, 2021, we granted Anne's third request to augment the record on appeal.

2

listed for sale with a real estate agent of [James's] choosing and sold as-is. In the event of sale, the proceeds are to be distributed as described in the 'Equalization' section below. [¶] Unless otherwise agreed in writing between the parties, within sixty days of entry of judgment, [James] must make any equalization payment due [Anne] under this judgment and provide proof of refinance of the indebtedness secured by the residence to remove [Anne's] liability. Upon receipt of the entirety of any equalization payment due and the proof of refinance, or upon expiration of the sixty day period for payment and refinance, [Anne] must vacate the residence within 15 days. . . . The Court reserves jurisdiction to make any order necessary for enforcement of the judgment."

Anne timely appealed the trial court's judgment, and James filed a cross-appeal. Anne subsequently filed a notice of stay of proceedings pending the appeal.

### B. *James's Request for Order To Vacate and Writ of Possession and the September 26, 2019 Hearing*

On August 12, 2019, exactly 60 days after the entry of judgment, James filed an ex parte request for order (RFO) extending his time to obtain financing for the required equalization payment. James claimed that, because the house was in a dilapidated state, no lender would agree to refinance it until extensive repairs were made.

According to James, Anne brought about the need for repairs, as she had exclusive use and control of the house for the six years leading to trial. James therefore requested that the court order Anne to vacate the house and that he be given exclusive use and possession of it so that he could make the necessary repairs. James also offered to pay Anne a $20,000 advance on the equalization payment to facilitate her move.

3

Anne filed responsive papers opposing James's RFO.[5] Anne also requested an award of attorney fees and costs of $4,382.65 under section 2030, which she argued was necessary to defend against James's RFO. Anne's request for fees and costs included a current income and expense declaration, supporting declarations, attachments, and financial documents, and the declaration of her attorney. The request also presented an income and expense declaration from James dated May 1, 2019, and copies of several monthly balance sheets from 2019 for James's medical practice.

A hearing on the matter was set for September 4, 2019. Because Judge Elizabeth Hill, who presided over the trial, recused herself pursuant to Code of Civil Procedure section 170.1 a few days before James filed his RFO, the case was reassigned to Judge Richard DuBois, and the hearing on the request for order was held on September 26, 2019.

At the hearing, the court initially denied James's request for an extension of time to obtain refinancing. The court interpreted the judgment to require Anne to vacate the property within 15 days of James paying her equalization and removing her from the title, or within 15 days of the expiration of the 60-day period for James to do so. At the time of the hearing, both the 60-day period and the 15-day period had expired. The court determined that additional orders were required to enforce the judgment. The court granted James's request for exclusive possession of the property and ordered a writ of possession to issue.

In addition, the court responded to Anne's request for attorney fees and costs under section 2030 by saying "the Court is denying any requests at this

[5] In an order filed on January 7, 2021, we granted Anne's second request to augment the record on appeal.

4

time." When Anne's attorney requested a statement of decision, the court said, "the order is based upon the clear provisions of the judgment."

Later that day, the writ of possession issued, per the order of the court.

## C. *Anne's Request for Order To Stay the Writ of Possession and the Court's Order Granting the Request*

On October 2, 2019, Anne submitted an ex parte RFO asking the court to stay the writ of possession and to vacate the court's September 26, 2019 order. In response, James filed a responsive declaration requesting an order that he is entitled to sole possession of the property so that he may sell it in accordance with the court's judgment. James also requested an award of sanctions pursuant to section 271.

On October 4, 2019, the court granted Anne's RFO and stayed the writ of possession. The court declined, though, to vacate the entirety of its earlier order and ordered that Anne shall vacate the residence "forthwith."

Anne timely appealed the September 26, 2019 order, the October 4, 2019 order, and the writ of possession. We address all of these issues below.

## D. *Stipulated Order from January 12, 2021*

During the pendency of this appeal, the parties entered into an agreement dated December 7, 2020, stipulating, among other things, that Anne would vacate the residence by January 16, 2021, and that a new writ of possession would go into effect on January 17, 2021. These stipulations are reflected in findings and an order filed by the court on January 12, 2021. Anne complied with the stipulated order and vacated the residence.

5

## II. DISCUSSION

### A. *The September 26, 2019 Writ of Possession and October 4, 2019 Order To Vacate*

#### 1. The Trial Court Had Jurisdiction To Issue a Writ of Possession and Order Anne To Vacate the Property

At the outset, we must address a fundamental jurisdictional challenge Anne makes to the trial court's power to enter any orders enforcing the judgment. Anne contends that the family court lacked jurisdiction to enforce the judgment via a writ of possession and order to vacate because "commanding [a party] to vacate the family home . . . is in the nature of a mandatory injunction" and "[i]n the absence of a statutory provision to the contrary, the enforcement of a mandatory injunction is stayed by the perfection of an appeal . . . ." (*Smith v. Smith* (1941) 18 Cal.2d 462, 465.) Anne also invokes Code of Civil Procedure section 916, subdivision (a), which provides as follows: "Except as provided in Sections 917.1 to 917.9 . . . the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order."

We agree with Anne that the trial court's order requiring her to vacate the marital residence is a mandatory injunction, and that, absent a statutory exception, her appeal of the judgment stays enforcement. But she overlooks a statutory exception under Code of Civil Procedure section 917.4. Unlike *Smith v. Smith*, *supra*, 18 Cal.2d 462, where this statutory exception was not invoked, James invokes it here. The statute provides "[t]he perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order appealed from directs the sale, conveyance or delivery of possession of real property which is in the possession or control of the appellant or the party ordered to sell, convey or deliver possession of the

6

property, unless an undertaking in a sum fixed by the trial court is given . . . ." (Code Civ. Proc., § 917.4.)

Here, the challenged orders direct the conveyance and the delivery of possession of the marital residence to James. In the event that conveyance and delivery of possession cannot happen within a specified period of time, the judgment also directs the sale of the property. At the time of judgment, the marital property was in the possession and control of Anne. Anne gave no undertaking to support a stay of enforcement of the judgment, as the statute requires. Accordingly, we reject her contention that the trial court lacked jurisdiction to make further orders to enforce the judgment. The exception set forth in Code of Civil Procedure section 917.4 applies.

## 2. The Stipulated Order from January 12, 2021 Renders the Appeal of the Writ of Possession and Order To Vacate Moot

We need not address any of Anne's remaining arguments related to the writ of possession and order to vacate, because subsequent stipulations reached by the parties render the appeal of these issues moot.

"It is well settled that an appellate court will decide only actual controversies and that a live appeal may be rendered moot by events occurring after the notice of appeal was filed." (*Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557.) "A case is moot when any ruling by this court can have no practical impact or provide the parties effectual relief." (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888.)

James argues that the writ of possession and order to vacate issues are moot because the parties resolved those issues by agreement, as reflected in the stipulated January 12, 2021 order. That order provides "[i]t was stipulated that Anne would vacate the residence by January 16, 2021" and "[i]t was stipulated that a new writ of possession for the residence was issued

7

and its execution . . . stayed until January 17, 2021." According to James, the stipulated order means a ruling on the merits will have no practical impact on the parties. Even if we agree with Anne and vacate the challenged orders, James contends, Anne cannot benefit from any effective relief because she has now vacated the property, leaving him in possession so that he may move forward with repairs.

We agree. Anne insists her appeal of the superseded writ of possession and order to vacate is not moot because (1) the stipulation to vacate is not "retroactive" to the previous orders; (2) she did not stipulate to the issuance of a new writ of possession; (3) a decision on their merits affects future and contingent legal rights; and (4) dismissal of her appeal on these issues would imply affirmance of the appealed orders. Each of these arguments fails.

Even if she is correct about what she characterizes as "retroactivity," and the stipulated orders are not retroactive in the sense she employs the concept, that does not defeat the mootness argument. Anne's rights before the January 12, 2021 order are not at issue. For the purposes of determining mootness, the only question relevant to our analysis is whether we can provide effective relief *now*.

Anne's second argument lacks merit as well. The record plainly shows that she did in fact stipulate that a new writ of possession was issued and effective on January 17, 2021.

Anne's third contention, that dismissal of her appeal would imply affirmance, also fails. She is correct that, in theory, there is a potential problem here. Once a stay under Code of Civil Procedure section 916, subdivision (a) goes into effect, any later order issued by the trial court is void because it has been "*divested of power* to act on matters 'embraced in' or 'affected by' the appealed judgment or order." (Eisenberg et al., Cal. Practice

8

Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶ 7:2.) If an appeal of such an order is dismissed by an appellate court (through a finding of mootness, for instance), the dismissal would act as an affirmation of a void order. (*Id.*, ¶ 5:48.) But that is why we paused at the outset to point out the applicability of a statutory exception to the general rule under Code of Civil Procedure section 917.4. To the extent Anne's concern is that an implied affirmance on the merits of a validly entered order might somehow prejudice her going forward, we will make clear in our disposition that we are reversing the trial court's possession-related orders as moot because they have been superseded by the stipulated findings and order entered January 12, 2021, and the new writ of possession entered January 17, 2021. (*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134–135; *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 942–947.)

This leaves, finally, Anne's argument that the writ of possession and order to vacate issues are not moot because future and contingent legal rights, specifically the parties' respective rights to attorney fees under section 2030 and sanctions under section 271 will be affected by our decision on the merits.[6] Whether anything we say on the merits of Anne's appeal might affect the trial court's future exercise of discretion under these statutes, and if so, how, are matters of speculation. We are tempted to use a metaphor about not letting the tail wag the dog, but said more plainly we are simply not inclined to devote judicial resources to a speculative project. In

---

[6] James has requested in the trial court sanctions under section 271 against Anne for her opposition to the writ of possession and order to vacate. Anne argues that a decision on the merits of her appeal affects James's current request for sanctions and her right to request sanctions in the future against James under section 271. Anne also argues that her right to request future need-based attorney fees and costs under section 2030 will be affected by a decision on the merits.

support of an argument that we should, Anne cites *Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 96, but there was nothing speculative about the outcome-determinative effect of the appeal in that case on the fee-shifting clause that governed recovery of fees and costs there.

## B. *The September 26, 2019 Order Denying Anne's Request for Attorney Fees and Costs*

The last issue presented here is Anne's challenge to the denial of her request for attorney fees and costs under section 2030. Anne requested an award of $4,382.65, which she argued was necessary to defend against James's request for an order granting him exclusive possession of the 205 W. Floresta Way property. She contends the court erred in granting her no attorney fees and failed to make express findings as mandated by the statute. We agree.

Sections 2030 and 2032 govern need-based awards for attorney fees and costs in dissolution proceedings. Under section 2030, subdivision (a)(1), "the court shall ensure that each party has access to legal representation . . . by ordering, if necessary based on . . . income and needs assessments, one party . . . to pay to the other party . . . whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding . . . ." In addition, "the court shall make findings on whether an award of attorney's fees and costs . . . is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for [the] legal representation of both parties." (§ 2030, subd. (a)(2).)

Under section 2032, "[t]he court may make an award of attorney's fees . . . where the making of the award, and the amount of the award, are *just and reasonable under the relative circumstances* of the respective parties." (§ 2032, subd. (a), italics added.) "Financial resources are only one factor for

10

the court to consider . . . ." (§ 2032, subd. (b).) "The trial court may also consider the other party's trial tactics." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 975 (*Falcone & Fyke*).) "Notwithstanding the parties' relative economic circumstances, an award under section 2030 et seq. is properly denied if a case has been overlitigated or if the fees otherwise were not 'reasonably necessary.' " (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 112.)

We review a court's denial of a section 2030 motion for abuse of discretion. (*Falcone & Fyke*, *supra*, 203 Cal.App.4th at p. 975.) Although the court has broad discretion in fashioning a need-based award, " 'the record must reflect that the trial court actually exercised that discretion, and considered the statutory factors in exercising that discretion.' " (*Ibid.*) Even if error is shown, however, we will not reverse unless the appellant establishes the "error was prejudicial by showing there is 'a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached.' " (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1051; see Cal. Const., art. VI, § 13.)

It is clear from the record that the trial court did not make any of section 2030's required findings. At the September 26, 2019 hearing, the court denied Anne's request for attorney fees by simply saying "the Court is denying any requests at this time." Anne's attorney requested a statement of decision, but the court declined to make findings as to the parties' relative economic circumstances or the reasonableness of the fees Anne incurred. "A failure to exercise discretion is an abuse of discretion." (*Kim v. Euromotors W./The Auto Gallery* (2007) 149 Cal.App.4th 170, 176.)

Since the trial court has given us no findings to review, we must conclude that it abused its discretion in denying Anne's request for attorney

fees.  James argues that the oversight is not prejudicial.  He points to the trial court's three previous denials of Anne's requests for attorney fees, and to this court's affirmance of those denials, as evidence that Anne would not have prevailed on this request.

To provide necessary context, we will summarize what happened in those previous appeals.

The trial court previously denied three separate fee motions filed by Anne in June 2018, December 2018, and October 2018, and this court affirmed all three previous denials.[7]  (*In re Marriage of Tearse* (Oct. 21, 2020, A155541, A156019) [nonpub. opn.] [affirming denial of June 2018 fee request]; *In re Marriage of Tearse* (Oct. 15, 2020, A156538) [nonpub. opn.] [affirming denial of December 2018 fee request]; *In re Marriage of Tearse* (June 9, 2021, A157576) [nonpub. opn.] [affirming denial of October 2018 fee request].)  In denying the three previous motions, the court relied each time on James's July 23, 2018 income and expense declaration.  (*In re Marriage of Tearse*, *supra*, A155541, A156019; *In re Marriage of Tearse*, *supra*, A156538; *In re Marriage of Tearse*, *supra*, A157576.)

With respect to the trial court's denial of Anne's June 2018 request, we found no abuse of discretion in the court's determination that while there was an income disparity between the parties, James's monthly expenses rendered him unable to pay for both parties' legal representation.  (*In re Marriage of Tearse*, *supra*, A155541, A156019.)  Specifically, the court found James's average monthly income of $30,007 as reported in his declaration was just

---

[7] In an order filed on July 15, 2021, this court, on its own motion, took judicial notice of the records on appeal in three prior appeals between the same parties:  A155541/A156019, A156538, and A157576.  On our own initiative, we also take judicial notice of our prior opinions in these cases.  (See Evid. Code, §§ 452, subd. (d), 459.)

12

enough to pay for his monthly expenses. (*In re Marriage of Tearse*, *supra*, A155541, A156019.) As for the denial of the December 2018 fee motion, we found no prejudice in the absence of express statutory findings because the motion used the same financial information as that in the June fee motion, and Anne had not shown the parties' relative financial circumstances had changed since then. (*In re Marriage of Tearse*, *supra*, A156538, citing *Falcone & Fyke*, *supra*, 203 Cal.App.4th at pp. 975–976 [held " '[i]t is not irrational to deny a repetitive motion [for attorney fees] in unchanged circumstances' "].) Because Anne's October 2018 fee motion relied on the same July 23, 2018 income and expense declaration as the two prior appeals, we held there was no showing of a change of the parties' financial circumstances and found that Anne could not show prejudice from the court's denial of her fee motion. (*In re Marriage of Tearse*, *supra*, A157576; see *Falcone & Fyke*, *supra*, 203 Cal.App.4th at pp. 975–976.)

One important difference here is that Anne's current request relies on a more recent income and expense declaration from James dated May 1, 2019, and balance sheets from James's medical practice from the same time period. James argues that these new documents show him to be in a significantly worse financial situation than he was when the previous requests were denied. James's July 2018 income and expense declaration showed he earned an average income of $30,007 per month and reported monthly expenses of $23,949. At that point he had paid $325,368 in attorney fees and still owed $63,400. James's May 2019 income and expense declaration showed he earned an average income of $23,000 per month and reported monthly expenses of $30,292. By then he had paid $415,301.08 in attorney fees and still owed $109,379. By any estimation, James's financial resources *are* worse off than they were when the family court previously made express

13

findings and denied Anne's fee requests. The operative income and expense declaration for this appeal shows that James earns approximately $7,000 less than his expenses, while the operative income and expense report from the three previous appeals showed he earned approximately $6,000 more than his expenses. Moreover, his debt to his attorneys has increased by nearly $46,000.

Nonetheless, by the terms of the statute, the necessary findings require more than just a comparative analysis of James's financial situation now versus when the three previous requests were denied. Anne's financial situation is also relevant, as are the trial tactics of the parties. While the sheer number of trial court motions and appeals that Anne has initiated may suggest what the trial court's view of the matter of tactics might be, our view of this litigation has been episodic so far, and thus we do not have enough context to say with confidence how the trial court would assess the matter of situational tactics, if called upon to do so expressly. Here, the specific dispute at issue has to do with occupancy of the residence in which Anne was living. Whether her tactics in expending the relatively small amount of $4,382.65 to defend James's RFO was reasonably proportionate to the stakes involved, and if so—given the parties' relative current financial circumstances at the time James's RFO was filed—whether James ought to bear those fees in service of ensuring equal access to representation, is something the trial court ought to address in the first instance.

We shall therefore reverse the trial court's order denying Anne fees and costs and remand the matter with instructions to make the express findings mandated by the statute.

## III. DISPOSITION

We reverse as moot the orders of September 26, 2019 and October 4, 2019 relating to possession of the family home, and we vacate as moot the original writ of possession. Our disposition in this regard does not imply that any of these orders was erroneous, but is solely for the purpose of returning jurisdiction over the case to the superior court and avoiding an inference that the appealed orders were affirmed on the merits. (*Paul v. Milk Depots, Inc.*, *supra*, 62 Cal.2d at pp. 134–135; *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa*, *supra*, 198 Cal.App.4th at pp. 942–947.) Although the order of September 26, 2019, denying Anne's request for attorney fees under section 2030 is not moot, we reverse that order on the merits and remand with directions to the trial court to reconsider Anne's request for fees under section 2030 and to make the express findings mandated by that statute. We express no view of whether the requested fees are awardable, or if so in what amount.

The parties shall bear their own costs on appeal.

STREETER, Acting P. J.

WE CONCUR:

TUCHER, J.[*]
BROWN, J.

---

[*] Presiding Justice of the Court of Appeal, First Appellate District, Division Three, sitting by assignment pursuant to article VI, section 6 of the California Constitution.