[No. E024244. Fourth Dist., Div. Two. July 20, 2000.]

CUCAMONGANS UNITED FOR REASONABLE EXPANSION, Plaintiff and Appellant, v.
CITY OF RANCHO CUCAMONGA, Defendant and Respondent;
LAUREN DEVELOPMENT, INC., et al., Real Parties in Interest and Respondents.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.E. and part II.B.

474

**COUNSEL**

Law Office of Craig A. Sherman, Craig A. Sherman; Loeb & Loeb, Malissa Hathaway McKeith and Martha Sharp for Plaintiff and Appellant.

James L. Markman, City Attorney; Richards, Watson & Gershon and Steven H. Kaufmann for Defendant and Respondent.

Hewitt & McGuire, Mark R. McGuire and Andrew K. Hartzell for Real Parties in Interest and Respondents.

## OPINION

**WARD, J.**—Plaintiff and appellant Cucamongans United for Reasonable Expansion (CURE) appeal from a judgment denying its petition for writ of administrative mandamus brought under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).[1]

CURE contends that the trial court erred because new information and changes in the law and scientific standards warrant further environmental review. Real parties in interest Lauren Development, Inc. (Lauren) and Cristiano Partners I, and defendant and respondent City of Rancho Cucamonga (City) (collectively referred to as respondents) contend that the judgment should be affirmed because: (1) the appeal is moot because the City has no jurisdiction to require a supplemental environmental impact report (SEIR); and (2) Even if the appeal is not moot, the City's determination is supported by substantial evidence. We agree with respondents and affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. *The Property*

The subject property is an approximate 25-acre tract located in the City, east of Haven Avenue and north of Tackstem Street and Ringstem Drive (property). The property is the remainder portion of two tracts, tract No. 12332 and tract No. 12332-2, in Haven View Estates, a 204-lot gated community approved by the City in 1983.

An aged, unlined earthen levee, located along the south side of the property, was created prior to 1938. The San Bernardino County Flood Control District had an easement over the property for maintenance of the levee. In 1983, the United States Army Corps of Engineers built the Deer Creek Debris Basin and Channel (Debris Basin) to provide flood protection for this area. The flood control district determined that, because of the

---

[1]All statutory references are to the Public Resources Code unless otherwise specified.

completion of the Debris Basin, the levee was no longer necessary for use in controlling regional floods. Consequently, the flood control district relinquished its easement over the property in 1986. In 1989, to satisfy a condition of approval of phase II of Haven View Estates, a portion of the levee was demolished to provide an emergency access road. The breach in the levee is approximately 210 feet wide at the top and 80 feet wide at the bottom.

## B. *Approval of Subdivision and Adoption of Negative Declaration*

From 1989 to July 1990, M. J. Brock (Brock), the prior owner of the property, submitted numerous applications for approval of a tentative tract map, subdividing the property into 40 single-family residential lots, and a conceptual grading plan (the project). The City rejected the applications as incomplete because it was concerned about how the project would impact the drainage system. After Brock addressed the City's concerns, the City finally accepted the application as complete in July, 1990. Thereafter, three neighborhood meetings were held on the project "to allow for the opportunity to review the plans."

On August 14, 1990, the City completed an initial study environmental checklist which determined that the project would have no significant effects on the environment.

The City's planning commission held public hearings on the project on September 26 and November 14, 1990. At the first hearing, the city engineer denied Brock's request to modify a condition requiring removal of flood zone designation for the property before final map approval. Instead, the city engineer recommended more restrictive conditions, which were then imposed on the project.

After the second hearing, the planning commission approved a negative declaration and the tentative map, subject to 73 detailed conditions. Among other things, Brock was required to (1) design drainage protection facilities, from the east tract boundary to Deer Creek Channel, "to the satisfaction of the San Bernardino County Flood Control District"; (2) prepare reports, plans, hydrologic and hydraulic calculations relating to floodplain boundaries; (3) have the Federal Emergency Management Agency (FEMA) remove "the current FIRM [flood insurance rate map] Zone AO designation

. . . from the project area;"[2] and (4) ensure "[t]he required drainage channel along the north project boundary shall be operational prior to removal of the existing levee within the project area."

No one challenged the adoption of the negative declaration or the approval of the tentative map.

C. *The Design Review Application Process*

In April 1997, Lauren, the current developer, submitted its design review application for detailed site plan and architectural review of the 40 homes proposed for construction.

The planning commission held public hearings on June 11 and July 9, 1997, on the design review application. At the conclusion of the two hearings, the commission approved the design review application. CURE appealed the commission's approval to the city council.

On August 20, 1997, the city council held a six-and-a-half-hour. public hearing on the application. During the hearing, CURE presented "new and additional information [that had] come into existence which was not known, and could not have been known, at the time of the November 14, 1990[,] earlier environmental review and decision date." On September 3, 1997, the city council denied Lauren's design review application and found "that no further environmental review [was] required in conjunction with Development/Design Review 97-11." Moreover, the city council found "that no further environmental review is required on conjunction with Development/Design Review 97-11."

D. *Trial Court Proceedings*

On October 2, 1997, CURE filed a petition for writ of mandate seeking injunctive and declaratory relief against respondents.

The City demurred to the petition contending that, because the City had denied Lauren's application, no SEIR was required under CEQA. The trial court overruled the demurrer.

On September 28, 1998, after two days of oral argument and reviewing the administrative record, the trial court denied the writ petition and issued

---

[2]The reason for this condition was because the project site was shown to be within an area subject to inundation during a 100-year flood, when in fact the Debris Basin provided protection from a 200-year flood. Through Brock's efforts, FEMA lifted the property's FIRM Zone AO designation.

its findings and statement of decision. CURE filed a notice of appeal on January 15, 1999.

E. *Requests for Judicial Notice\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. ANALYSIS

### A. *The Appeal Is Moot*

 Respondents contend that, when the City denied the design review application process, there was no "discretionary approval"; hence, an SEIR is not required. We agree with respondents.

Under section 21166, "[w]hen an environmental impact report has been prepared for a project pursuant to this division, no subsequent or supplemental environmental impact report shall be required . . . unless one or more of the following events occurs: [¶] . . . [¶] (c) New information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available."[4]

Under the Guidelines,[5] "[i]f changes to a project or its circumstances occur or new information becomes available after adoption of a negative declaration, the lead agency shall prepare a subsequent EIR if required under subsection (a) [i.e., discovery of new information of substantial importance]. Otherwise the lead agency shall determine whether to prepare a subsequent negative declaration, an addendum, or no further documentation." (Guidelines, § 15162, subd. (b).) However, if the new information of substantial importance is discovered after the approval of the project, "a subsequent EIR or negative declaration shall only be prepared by the public agency which

---

\*See footnote, *ante,* page 473.

[4]Courts have held that rules which govern a situation where a subsequent or supplemental EIR must be prepared after an EIR is approved, also apply where a negative declaration, not an EIR, has been adopted. (*Snarled Traffic Obstructs Progress v. City and County of San Francisco* (1999) 74 Cal.App.4th 793, 798-800 [88 Cal.Rptr.2d 455]; *Benton v. Board of Supervisors* (1991) 226 Cal.App.3d 1467, 1479-1480 [277 Cal.Rptr. 481].)

[5]CEQA is augmented by the Guidelines for Implementation of the California Environmental Quality Act (Cal. Code Regs., tit. 14, § 15000 et seq. (cited hereafter as Guidelines)). Neither party challenges use of the Guidelines. Thus, for purposes of this opinion we afford the Guidelines the great weight to which they are presumptively entitled. (*Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6 Cal.4th 1112, 1123, fn. 4 [26 Cal.Rptr.2d 231, 864 P.2d 502].)

grants the *next discretionary approval* for the project, if any . . . ."[6] (Guidelines, § 15162, subd. (c), italics added.)

Legal commentators have noted that "[a] public agency may require a subsequent EIR *only when the agency grants a discretionary approval*; once all discretionary approvals have been obtained, no agency has jurisdiction to require a further EIR. 14 Cal Code Regs § 15162(c). See also 14 Cal Code Regs § 15163(e)." (1 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 1999) § 19.28, p. 735.) Moreover, in *Fort Mojave Indian Tribe v. Department of Health Services* (1995) 38 Cal.App.4th 1574 [45 Cal.Rptr.2d 822], the court stated that if new information develops after a project has been approved, "a supplemental or subsequent EIR must be prepared in connection with the *next discretionary approval, if any.*" (*Id.* at p. 1597, italics added.)

In this case, the negative declaration and subdivision plan were approved in 1990. CURE contends that "new information of substantial importance," that arose subsequent to the adoption of the negative declaration, warrants further environmental review. CURE, however, simply ignores the Guidelines, treatises and cases that state that an SEIR can only be prepared in connection with a discretionary *approval*. Here, CURE concedes that the City denied Lauren's design review application. Hence, there was no discretionary approval that would authorize the preparation of an SEIR.

Accordingly, because the City denied Lauren's design review application which prompted CURE's request for an SEIR, the City was not required to prepare an SEIR.

An appeal should be dismissed as moot when the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief. (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717].) Here, CURE's appeal is moot because the City does not have jurisdiction to require an SEIR since there was no discretionary approval involved.

Notwithstanding, there are three discretionary exceptions to the rules regarding mootness: (1) when the case presents an issue of broad public interest that is likely to recur (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1202, fn. 8 [31 Cal.Rptr.2d 776, 875 P.2d 1279]); (2) when there may be a recurrence of the controversy between the parties (*Grier v. Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 330 [127 Cal.Rptr.

---

[6]Section 15163, subdivision (a) of the Guidelines provides that an agency "may choose to prepare a supplement to an EIR rather than a subsequent EIR."

525]); and (3) when a material question remains for the court's determination (*Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200, 205 [265 Cal.Rptr. 620]). Here, because it is likely that there may be a recurrence of the same controversy between the parties and the parties have fully litigated the issues, we exercise our discretion to address the case on the merits.

B. *A Subsequent or Supplemental EIR Was Not Required\**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and Gaut, J., concurred.

A petition for a rehearing was denied August 10, 2000, and appellant's petition for review by the Supreme Court was denied October 18, 2000.

---

\*See footnote, *ante*, page 473.