Filed 8/26/13  AG Land Trust v. Marina Coast Water Dist. CA6
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AG LAND TRUST, | H038550 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. M105019) |
| v. | |
| MARINA COAST WATER DISTRICT, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

This CEQA[1] action arises from the approval of the Regional Desalination Project by appellant Marina Coast Water District (Marina Coast).  The Regional Desalination Project was to be owned and operated by Marina Coast, the Monterey County Water Resources Agency (Water Resources Agency), and the California American Water Company (Cal-Am), a corporation regulated by the California Public Utilities Commission (PUC).  Cal-Am's participation was to include the construction of a distribution system to deliver the desalinated water to customers on the Monterey Peninsula.

---

[1] California Environmental Quality Act, Public Resources Code section 21000 et seq.  All further statutory references are to the Public Resources Code unless otherwise indicated.

Respondent Ag Land Trust, a nonprofit group interested in preserving Monterey County farmland, challenged Marina Coast's approval of the Regional Desalination Project by filing a petition for a writ of mandate in the superior court. In support of its petition, Ag Land Trust argued that Marina Coast, not the PUC, should be the lead agency for CEQA purposes and that the environmental impact report (EIR) prepared by the PUC was inadequate. After a court trial, the trial court granted the first amended petition for writ of mandate, entered judgment in Ag Land Trust's favor, and issued a peremptory writ of mandate directing Marina Coast to set aside its approval of the Regional Desalination Project.

While Marina Coast's appeal from the judgment was pending, the PUC issued a decision finding that Cal-Am had withdrawn its support for the Regional Desalination Project and stating that the project "has no reasonable prospect of achieving its goals." (*Application of California-American Water Company* (2012) Cal. P.U.C. Dec. No. 12-07-008 [2012 Cal.PUC LEXIS 300], p. *28 (Decision No. 12-17-008).) We took judicial notice of the PUC's decision (Evid. Code, §§ 459, 452, subd. (c)) and requested supplemental briefing from the parties on the issue of whether the decision had rendered the appeal moot. For the reasons stated below, we determine that the appeal is moot and the appropriate disposition under the circumstances of this case is to reverse the judgment with directions to the trial court to dismiss the petition for a writ of mandate as moot. (See *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134 (*Paul*); *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 944-945 (*Coalition for a Sustainable Future*).)

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Regional Desalination Project*

Appellant Marina Coast is a public utility that provides water service to the City of Marina and its vicinity as well as the former Ford Ord. Cal-Am is a corporation that provides water service to parts of the Monterey Peninsula adjacent to Marina Coast's

2

service area.  As a privately-owned public utility, Cal-Am is regulated by the PUC.
Within Monterey County, the Water Resources Agency is responsible for increasing the
water supply and preventing its waste and diminution.[2]  As this court has previously
noted, "[i]t is well documented that water availability is a critical problem throughout
Monterey County."  (*Save Our Peninsula Committee v. Monterey County Bd. of
Supervisors* (2001) 87 Cal.App.4th 99, 108 (*Save Our Peninsula*).)

The history of the Regional Desalination Project begins in 1995, when "the State
Water Resources Control Board issued Order No. 95-10 and related Decision No. 1632.
Order No. 95-10 found that [Cal-Am], which was the principal supplier of water to the
Monterey Peninsula, had diverted excess water from the Carmel River basin 'without a
valid basis of right,' causing environmental harm.  Cal-Am was ordered to substantially
limit its diversions, to mitigate the environmental effects of its excess usage and to
develop a plan for obtaining water legally."  (*Save Our Peninsula*, *supra*, 87 Cal.App.4th
at p. 108.)

Among Cal-Am's subsequent efforts to find a legal water source was a proposal
for the Coastal Water Project, which included a water desalination plant.  In 2003, the
PUC designated itself as the lead agency for environmental review of the Coastal Water
Project.  In 2004, Cal-Am filed an application with the PUC for a certificate of public
convenience and necessity for construction and operation of the Coastal Water Project.
The PUC issued a notice of preparation of an EIR in 2006.

In 2008, Marina Coast and other public agencies proposed an alternative
desalination project known as the Regional Project.  The Regional Project, also known as
the Regional Desalination Project, involved three primary elements.  The Water
Resources Agency was to own, install, operate and maintain the wells from which
brackish water would be extracted.  Marina Coast was to own, construct, and operate the

---

[2] The Water Resources Agency and Cal-Am are not parties to this appeal.

3

desalination plant and transport desalinated water to a delivery point, where Marina Coast would receive some water for delivery to its customers and Cal-Am would also receive some water. Cal-Am was to construct a distribution system to deliver the desalinated water to its customers on the Monterey Peninsula. The PUC approved Cal-Am's participation in the Regional Desalination Project.

The PUC's January 2009 draft EIR evaluated the Regional Desalination Project and the Coastal Water Project proposed by Cal-Am. The final EIR was issued by the PUC and certified in December 2009. The PUC did not approve a specific project.

In March 2010, Marina Coast's Board of Directors approved acquisition of the Armstrong Ranch property for the location of a water desalination plant. Thereafter, on April 5, 2010, the Board of Directors approved the Regional Desalination Project on the condition that the PUC approve a settlement agreement pertaining to the Regional Desalination Project between Cal-Am, Marina Coast, and the Water Resources Agency. The PUC approved the settlement agreement and issued a certificate of public convenience and necessity to Cal-Am for the Regional Desalination Project in March 2011. (*Application of California American Water Company* (2011) Cal. P.U.C. Dec. No. 11-03-008 [2011 Cal.PUC LEXIS 141], p. *1.)

**B.** *Ag Land Trust's Petition for a Writ of Mandate*

Ag Land Trust is a self-described "California nonprofit public benefit corporation created with the intent to preserve Monterey County farmland . . . ." In April 2010 Ag Land Trust filed its first amended petition for a writ of mandate against respondent Marina Coast. In its petition, Ag Land Trust asserted that Marina Coast had formally approved the Regional Project on April 5, 2010, in reliance on the final EIR certified by the PUC in 2009 and a March 2010 addendum. Ag Land Trust sought declaratory relief, consisting of a declaration that Marina Coast had a duty to identify or obtain water rights for the Regional Project and a declaration that the Regional Project would violate the Monterey County Water Resources Agency Act. Additionally, Ag Land Trust sought a

4

peremptory writ of mandate directing Marina Coast to set aside its approvals of the Regional Desalination Project and to prepare a legally adequate EIR in compliance with CEQA.

## C. *The Trial Court's Statement of Decision and Judgment*

A court trial on Ag Land Trust's petition for writ of mandate was held on October 27, 2011. The trial court's amended statement of decision granting the petition was filed on February 2, 2012. The court found that (1) the final EIR is deficient because Marina Coast, not the PUC, was the lead agency under CEQA for the Regional Project since Marina Coast was the first to approve the project; (2) the final EIR is inadequate because it did not include a discussion of the availability of groundwater for the Regional Project and assumes that groundwater rights will be perfected in the future; (3) the trial court had jurisdiction over the matter since the PUC did not have authority to regulate Marina Coast with respect to the Regional Project; and (4) the Water Resources Agency and Cal-Am were not indispensible parties.

The judgment granting the first amended petition for writ of mandate and ordering issuance of a peremptory writ of mandate was filed on April 17, 2012. The judgment also included the trial court's findings, as follows: "The Court FINDS AND DETERMINES that Marina Coast Water District prejudicially abused its discretion and failed to proceed in the manner required by law in making its approvals of the Regional Desalination Project on March 16, 2010 and April 5, 2010, by proceeding as a responsible agency rather than as a lead agency, by failing to properly analyze the environment impact report as a lead agency under CEQA, and by failing to properly and adequately identify, discuss, and address the environmental impacts of the project, including but not limited to water rights, contingency plan, assumption of constant pumping, exportation of groundwater from the Salinas Valley Groundwater Basin, brine impacts, impacts on overlying and adjacent properties, and water quality, as required here for a lead agency under CEQA." The court reserved jurisdiction over Ag Land Trust's

5

claim for an award of private attorney general fees and costs under Code of Civil Procedure section 1021.5.

On April 17, 2012, the trial court issued a peremptory writ of mandate directing Marina Coast to "[v]acate and set aside its March 16, 2010 and April 5, 2010 approvals of the Regional Desalination Project, and each step approved by [Marina Coast] pursuant to . . . section 21168.9, subdivision (a). Further action to approve the project beyond setting aside and vacating these approvals by [Marina Coast] shall not be taken, except in accordance with the Judgment Granting First Amended Petition for Writ of Mandate ([CEQA]) and Ordering Issuance of Peremptory Writ of Mandate." The peremptory writ of mandate also directed Marina Coast to prepare a legally adequate EIR and to otherwise comply with CEQA in any subsequent action to approve the project.

In June 2012, Marina Coast filed a timely notice of appeal from the judgment.

### III. DISCUSSION

On appeal, Marina Coast contends that the trial court lacked jurisdiction in this case because collateral attacks on PUC decisions are prohibited under Public Utilities Code section 1759, subdivision (a). Marina Coast also contends that the judgment should be reversed due to several procedural bars, including "statutory preclusion," res judicata, mootness with respect to the land acquisition, lack of ripeness in the absence of final project approvals, failure to exhaust administrative remedies, failure to join indispensible parties, and failure to grant Marina Coast's motion to augment the record with the PUC's final project approvals. Additionally, Marina Coast argues that the trial court erred on the merits, since the PUC properly acted as the lead agency under CEQA and the PUC's EIR for the Regional Desalination Project was adequate.[3]

---

[3] This court granted the PUC's application to file an amicus curiae brief regarding the jurisdictional issue. Ag Land Trust filed an answer to the amicus curiae brief.

6

As we will discuss, we will not consider the merits of the appeal because we find that the appeal is moot due to an event that occurred while the appeal was pending. In its opening brief, Marina Coast acknowledges that in July 2012 the PUC granted Cal-Am's request to withdraw from the Regional Desalination Project and admits that "it is unlikely that the [Regional Desalination Project] will be built even if [Marina Coast] prevails in its appeal . . . ." On our own motion, we took judicial notice (Evid. Code, §§ 459, 452, subd. (c)) of the PUC's July 12, 2012 decision finding that Cal-Am has withdrawn its support for the Regional Desalination Project and granting Cal-Am's motion to withdraw its petition for clarification and modification of a prior PUC decision pertaining to the Regional Desalination Project. (Decision No. 12-07-008, *supra*, pp. \*\*27-28, 36.) The PUC also found in its July 12, 2012 decision that the Regional Desalination Project "has no reasonable prospect of achieving its goals." (*Id.* at p. \*28.)

Since it appeared that Cal-Am's withdrawal was potentially fatal to the Regional Desalination Project, we asked the parties to submit supplemental briefing addressing the issue of whether the appeal must be dismissed because the PUC's action had rendered the appeal moot. We also asked the parties to include a discussion of the following issues: (1) the current status of the Regional Desalination Project; (2) the general rule that the reviewing court may not issue an advisory opinion; and (3) assuming for purposes of argument that the appeal is moot, whether the appropriate disposition is reversal of the judgment and remand with directions to the trial court to dismiss the petition for a writ of mandate.

**A.** *The Parties' Contentions*

Ag Land Trust and Marina Coast submitted supplemental briefing in which they agree that the Regional Desalination Project "will not go forward." Both parties also argue that the appeal is not moot.

Marina Coast contends in its supplemental letter brief that the appeal is not moot because Cal-Am "now seeks approval of a project that 'includes many of the same

7

elements previously analyzed' " in the EIR prepared for the Regional Desalination Project. Citing section 21166, Marina Coast further explains that "[t]he existing EIR is being supplemented by a forthcoming Subsequent EIR that will 'utilize relevant data' from the existing EIR."[4] Marina Coast also asserts that the PUC's July 12, 2012 decision had no bearing on Marina Coast's property acquisition.

Alternatively, Marina Coast argues that even if the appeal is moot, this court should exercise its discretion to decide the issues raised on appeal under the exception for an issue of public importance likely to recur. Specifically, Marina Coast maintains that the issue of the superior court's jurisdiction "in collateral proceedings to review and correct CPUC decisions relating to time-sensitive CPUC projects" falls into that exception. Marina Coast also argues that resolution of the jurisdictional issue is necessary because Ag Land Trust has been awarded attorney's fees, which should have been denied since the trial court lacked jurisdiction in this case.

Ag Land Trust contends in its supplemental letter brief that the appeal is not moot because an actual controversy remains as to the adequacy of the EIR for the Regional Desalination Project. According to Ag Land Trust, "Marina Coast is in the process of using [its 2010] approvals and the EIR to pursue a different desalination plant at Armstrong Ranch."[5] Ag Land Trust therefore argues that an actual controversy remains as to the deficiencies in the EIR that were identified by the trial court in this case. Alternatively, if this court determines that the appeal is moot, Ag Land Trust urges that the appeal be simply dismissed, which will have the effect of affirming the judgment.

---

[4] We granted Marina Coast's request for judicial notice of a PUC document entitled "NOTICE OF PREPARATION Environmental Impact Report for the CalAm Monterey Peninsula Water Supply Project," dated October 2012.

[5] We granted Ag Land Trust's request for judicial notice of various documents relating to Marina Coast's "new desalination plant" project and the February 6, 2013 order awarding attorney's fees to Ag Land Trust.

**B.** *Mootness*

The rules governing the determination of whether an appeal is moot are well established. "It is settled that 'the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot effect the matter at issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him [or her] any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. [Citations.]' [Citations.]" (*Paul*, *supra*, 62 Cal.2d at p. 132; see also *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 215 [case is moot when reviewing court's decision can have no practical impact].)

However, the appellate court has the inherent power to retain a moot appeal under three discretionary exceptions: (1) the case presents an issue of broad public interest that is likely to recur; (2) the parties' controversy may recur; and (3) "a material question remains for the court's determination [citation]." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 480 (*Cucamongans*).)

**C.** *Analysis*

In the present case, the actual controversy between the parties was set forth in Ag Land Trust's writ petition, which sought a peremptory writ of mandate directing Marina Coast to "vacate and set aside its approvals of the Regional Desalination Project, and each step approved by [Marina Coast], and . . . [to] prepare, circulate and consider a legally adequate environmental impact report and otherwise comply with the [CEQA] in any subsequent action taken to consider and/or approve the Project." Thus, the actual controversy in this case centered on Ag Land Trust's challenge to Marina Coast's

9

approvals of the Regional Desalination Project and the adequacy of the EIR for that particular project.

Although the parties agree that the Regional Desalination Project will not go forward since Cal-Am has withdrawn its support, the parties nevertheless contend that an actual controversy remains with regard to the adequacy of the EIR that was prepared for the Regional Desalination Project. We disagree, since the EIR was specific to the approved Regional Desalination Project, as is required under CEQA.

The provisions of CEQA provide, for example, that "[t]he purpose of an environmental impact report is to identify the significant effects on the environment of *a project*, to identify alternatives to *the project*, and to indicate the manner in which those significant effects can be mitigated or avoided." (§ 21002.1, subd. (a), italics added.) "An EIR shall describe a range of reasonable alternatives to *the project*. . . ." (Cal. Code Regs., tit. 14, § 15126.6, subd. (a), italics added.) "The degree of specificity required in an EIR will correspond to the degree of specificity involved in the underlying activity which is described in the EIR. [¶] (a) An EIR on a *construction project* will necessarily be more detailed in the specific effects of the *project* . . . . " (Cal. Code Regs., tit. 14, § 15146, italics added.) Accordingly, where, as here, the issues on appeal concern the adequacy of the EIR for a project that will not be implemented, the appeal is generally moot. (See, e.g., *Coalition for a Sustainable Future*, *supra*, 198 Cal.App.4th at p. 941.)

We are not also convinced that the challenge to the adequacy of the EIR for the Regional Desalination Project remains an actual controversy under section 21166, as Ag Land Trust suggests. Section 21166 concerns the conditions under which a supplemental EIR will be required, as stated in the statute in relevant part: "[w]hen an [EIR] has been prepared for a project . . . no subsequent or supplemental [EIR] shall be required . . . , unless one or more of the following events occurs: [¶] (a) Substantial changes are proposed in the project which will require major revisions of the [EIR]. [¶] (b) Substantial changes occur with respect to the circumstances under which the project is

10

being undertaken which will require major revisions in the [EIR]. [¶] (c) New information, which was not known and could not have been known at the time the [EIR] was certified as complete, becomes available."

Under section 21166, therefore, a supplemental EIR "is a subsequent version of an EIR that revises the earlier EIR to make it adequate for a project's approval after conditions have changed." (*Mani Brothers Real Estate Group v. City of Los Angeles* (2007) 153 Cal.App.4th 1385, 1397.) Section 21166 is not applicable under the circumstances of the present case, where the Regional Desalination Project approved by Marina Coast will not be implemented due to Cal-Am's withdrawal.

The additional argument that an actual controversy remains regarding the adequacy of the EIR for the Regional Desalination Project since some elements or data from that EIR may be used in the future environmental impact analysis of a new desalination project is similarly unconvincing. By making this argument, the parties are implicitly requesting that this court provide an advisory opinion regarding the merits of the trial court's finding that the EIR for the now defunct Regional Desalination Project is legally inadequate. However, we must decline the parties' request, since " '[t]he rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court.' [Citation.]" (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 860 (*Salazar*).)

Absent an actual controversy, we also decline to issue an advisory opinion on the issue of whether the trial court properly exercised jurisdiction in this case under Public Utilities Code section 1759, subdivision (a). (See *Salazar*, *supra*, 9 Cal.4th at p. 860.) Further, we do not find that this moot appeal presents a jurisdictional issue of broad public interest that is likely to recur, since the record does not reflect that the jurisdictional issue has the potential to extend, if at all, beyond one proposed desalination project. (See *Cucamongans*, *supra*, 82 Cal.App.4th at p. 479.) In any event, we believe that if the jurisdictional issue arises, the issue may be determined in a future case involving an actual controversy.

11

Having determined that the appeal is moot, and also having declined to issue an advisory opinion, we next consider the appropriate disposition.

### D. *The Appropriate Disposition*

The general rule is that "when a case becomes moot pending an appellate decision, 'the court will not proceed to a formal judgment, but will dismiss the appeal.' [Citations]." (*Paul*, *supra*, 62 Cal.2d at p. 134.) It is also the general rule that "the involuntary dismissal of an appeal leaves the judgment intact." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 413 (*Jasmon O.*).)

In *Paul*, the California Supreme Court noted that former Code of Civil Procedure section 955 provided that " '[t]he dismissal of an appeal is in effect an affirmance of the judgment or order appealed from. . . .' " (*Paul*, *supra*, 62 Cal.2d at p. 134.) Determining that the basis for the judgment in the case before it had "disappeared," the *Paul* court further determined that "we should 'dispose of the case, not merely of the appellate proceeding which brought it here.' [Citations.] That result can be achieved by reversing the judgment solely for the purpose of restoring the matter to the jurisdiction of the superior court, with directions to the court to dismiss the proceeding. [Citations.] Such a reversal, of course, does not imply approval of a contrary judgment, but is merely a procedural step necessary to a proper disposition of this case." (*Id*. at pp. 134-135.)

In 1968, Code of Civil Procedure section 955 was repealed and replaced with Code of Civil Procedure section 913, which provides that "[t]he dismissal of an appeal shall be with prejudice to the right to file another appeal within the time permitted, unless the dismissal is expressly made without prejudice to another appeal." (Stats. 1968, ch. 385, § 2.) Although the statutory language regarding the effect of the dismissal of an appeal has changed, courts have continued to follow the ruling in *Paul* that dismissal of an appeal as moot constitutes an affirmance of the judgment. (See *Jasmon O.*, *supra*, 8 Cal.4th at p. 413.)

12

Courts have also continued to apply the rule set forth in *Paul* that " ' "[w]here an appeal is disposed of upon the ground of mootness and without reaching the merits, in order to avoid ambiguity, the preferable procedure is to reverse the judgment with directions to the trial court to dismiss the action for having become moot prior to its final determination on appeal. [Citations.]" [Citations.]' [Citation]." (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 229; see *Coalition for a Sustainable Future*, *supra*, 198 Cal.App.4th at p. 944-945; *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1585-1586; *San Bernardino Valley Audubon Society v. Metropolitan Water Dist.* (1999) 71 Cal.App.4th 382, 404; *County of San Diego v. Brown* (1993) 19 Cal.App.4th 1054, 1090; *In re Marriage of Mcfarlane & Lang* (1992) 8 Cal.App.4th 247, 258; *Lee v. Gates* (1983) 141 Cal.App.3d 989, 992-994.)

We determine that a disposition under the rule of *Paul* and its progeny, rather than a simple dismissal of the appeal, is appropriate in the present case. "Reversal with directions to the trial court to dismiss is the equivalent of dismissal of the appeal, but avoids the ambiguity of the latter procedure which does not dispose of a subsisting trial court judgment in a case wherein the issues are moot." (*Bell v. Board of Supervisors* (1976) 55 Cal.App.3d 629, 637.) Having concluded that the appeal is moot, and also having declined to reach the merits by way of an advisory opinion, we will appropriately avoid affirming the judgment by implication. (See *Coalition for a Sustainable Future*, *supra*, 198 Cal.App.4th at pp. 944-945.)

Finally, we emphasize that in our decision today we express no opinion regarding the pending appeal of the February 6, 2013 order awarding attorney's fees to Ag Land Trust (*AG Land Trust v. Marina Coast Water District*, H039559), of which we only take judicial notice. (Evid. Code, § 452, subd. (d)(1).)

13

## IV.  DISPOSITION

The judgment is reversed and the matter is remanded with directions to the trial court to dismiss the petition for writ of mandate as moot.  The parties shall bear their own costs on appeal.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MÁRQUEZ, J.

14