Filed 9/13/22  In re M.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.D., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E078852 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2000679) |
| v. | OPINION |
| S.D. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Cheryl C. Murphy, Judge.

Affirmed with directions.

Sara Vaona, under appointment by the Court of Appeal, for Defendant and

Appellant, D.R.

The Law Office of Christine E. Johnson and Christine E. Johnson, under

appointment by the Court of Appeal, for Defendant and Appellant, S.D.

Teresa K.B. Beecham and Catherine E. Rupp, County Counsel for Plaintiff and Respondent.

The only issue in this appeal following the termination of parental rights is whether undisputed errors in complying with the duty of initial inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) are prejudicial. (See *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*).) Because the record reveals readily obtainable information likely to bear meaningfully on whether the child is an Indian child through the maternal grandfather, we find the errors prejudicial and conditionally affirm and remand with directions.[1]

## I. BACKGROUND

In November 2020, plaintiff and respondent Riverside County Department of Public and Social Services (DPSS) filed a petition pursuant to section 300 for M.D., whose parents are defendants and appellants D.R. (Mother) and S.D. (Father). Because this appeal raises only ICWA compliance, we need not discuss the circumstances leading to the child's removal or the parents' reunification efforts, other than to note that the juvenile court terminated Mother's and Father's parental rights to M.D. in April 2022.

Only Mother's potential Indian ancestry is at issue in this case. In a report submitted November 24, 2020, DPSS stated that on November 13 Mother had "claimed

---

[1] Undesignated statutory references are to the Welfare and Institutions Code. In addition, because ICWA uses the term "Indian," we do the same for consistency, even though we recognize that other terms, such as "Native American" or "indigenous," are preferred by many.

she had Indian Ancestry" but "was unable to provide any information such as the tribe name or the name and information of a relative to contact." The social worker reported that Mother "indicated that she would send me the information needed via text; however, she did not provide the information." The report included the names of Mother's father as well as two of Mother's siblings, among others. As early as November 16, however— three days after Mother claimed she had Indian ancestry— DPSS stated that "Mother has No Native American Indian Ancestry" in ICWA notices sent to tribes identified as part of its inquiry into Father's potential Indian ancestry.

On December 2, Mother filed a Form ICWA-020 (Parental Notification of Indian Status), where instead of marking the boxes next to statements suggesting Indian ancestry such as "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe" Mother checked the box next to "None of the above apply." Thus, although Mother originally claimed she had Indian ancestry, her response on the form now suggested otherwise.

At the combined jurisdiction and disposition hearing in January 2021, the juvenile court noted that ICWA notices had been sent to the Eastern Band of Cherokee Indians (due to Father's possible Indian ancestry) and that the tribe responded that Father was neither registered nor eligible to register as a tribe member. However, there was no discussion at the hearing about Mother's potential Indian ancestry or why she was no longer claiming Indian ancestry. The juvenile court found that "ICWA may apply to the minor child."

Mother never reported additional information regarding potential Indian status. At the six-month review hearing, 12-month review hearing, and the section 366.26 hearing where parental rights were terminated, the juvenile court found that ICWA did not apply.

## II. DISCUSSION

Mother and Father (hereinafter appellants) contend on appeal that DPSS failed its duty of initial inquiry under ICWA by failing to ask five maternal relatives about possible Indian ancestry. (See *In re T.G.* (2020) 58 Cal.App.5th 275, 291 ["Non-Indian parents have standing to raise issues of ICWA compliance on appeal"].) DPSS does not deny that it erred when performing its initial inquiry of Mother. Rather, it contends that the errors are not prejudicial. On this record, we find that they are.

"Congress enacted ICWA over 40 years ago to address "'abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" [Citation.] . . . As a result, ICWA's express purpose is 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.'" (*In re K.T.* (2022) 76 Cal.App.5th 732, 740.)

"When ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding. [Citation.] If the tribe does not assume jurisdiction, the

state court must nevertheless follow various heightened procedural and substantive requirements, such as stricter removal standards and mandatory placement preferences that promote keeping Indian children with family members of members of their tribe." (*In re K.T.*, *supra*, 76 Cal.App.5th at p. 741.) "Violations of ICWA "'render[] the dependency proceedings, including an adoption following termination of parental rights, vulnerable to collateral attack if the dependent child is, in fact, an Indian child.""" (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741.)

ICWA's concern is with Indian children, and "[b]ecause it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case. These requirements are sometimes collectively referred to as the duty of initial inquiry." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741.)

"The duty of initial inquiry arises, in part, from federal regulations under ICWA stating that '[s]tate courts must ask each participant in an . . . involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child' and that '[s]tate courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' [Citation.] Thus, the federal regulation places a duty on only 'courts' to inquire or instruct 'participants' and 'parties' to a case." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741.)

"State law, however, more broadly imposes on social services agencies and juvenile courts (but not parents) an 'affirmative and continuing duty to inquire' whether a

5

child in the dependency proceeding 'is or may be an Indian child.' [Citation.] When the agency takes the child into temporary custody, its duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' [Citation.] State law also expressly requires the juvenile court to ask participants who appear before the court about the child's potential Indian status." (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 741-742.)

"If the initial inquiry gives the juvenile court or the agency 'reason to believe' that an Indian child is involved, then the juvenile court and the agency have a duty to conduct 'further inquiry' [citation], and if the court or the agency has 'reason to know' an Indian child is involved, ICWA notices must be sent to the relevant tribes." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

Here, neither the duty of further inquiry nor ICWA's notice provisions are at issue because no one has contended there is "reason to believe" M.D. is an Indian child through Mother. Rather, appellants focus on the effect of DPSS's alleged failures during its initial inquiry to gather information that *could have* triggered additional duties.

In *Benjamin M.*, this court concluded that prejudice exists when "the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70

6

Cal.App.5th at p. 744.) Although other cases both before and after *Benjamin M.* have sometimes taken other approaches (see, e.g., *In re Dezi C.* (2022) 79 Cal.App.5th 769), we apply the *Benjamin M.* standard here.

Appellants contend that the error here stems from DPSS's knowledge of five maternal relatives and its failure to ask any of them about possible Indian ancestry. The five relatives at issue are Mother's two siblings, mother, aunt, and uncle.

In its briefing on appeal, DPSS does not dispute that these relatives were never asked about potential Indian ancestry prior to the termination of appellants' parental rights. However, along with the respondent's brief, DPSS submitted an affidavit from a social worker describing interviews with and attempts to interview Mother's mother and Mother's aunt, all of which occurred while the appeal was pending.[2]

Citing the affidavit, DPSS moved to dismiss the appeal as moot and in the alternative requested judicial notice of the affidavit. At various points in the motion, DPSS called the motion an application to augment the record and cited to Code of Civil Procedure section 909, which allows appellate courts to "take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal" "in the interests of justice."

As an initial matter, we note that neither dismissing the appeal as moot, nor taking judicial notice, nor augmenting the record is warranted here. "An appeal should be

---

[2] The affidavit also contended that Mother's uncle was related to Mother by marriage and that any information he had pertaining to M.D.'s Indian ancestry would not differ from information provided by Mother's aunt, to whom the uncle was married.

7

dismissed as moot when the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479.) DPSS has made no attempt to argue why the new affidavit would make it impossible for us to grant parents effective relief by reversing the order terminating appellants' parental rights, and we see no reason why that might be so. In addition, although this court may take judicial notice of documents, the affidavit is not a proper subject of judicial notice under any available option. (See Evid. Code, §§ 451-453, 459.) Finally, "[t]he augmentation procedure cannot be used to bring up matters occurring during the pendency of the appeal because those matters are outside the superior court record." (*In re K.M.* (2015) 242 Cal.App.4th 450, 456.) We construe the motion as a motion to consider new evidence under Code of Civil Procedure section 909. (See *In re M.B.* (2022) 80 Cal.App.5th 617, 627 [doing same].)

There is currently a split in the Court of Appeal on the propriety of taking additional evidence under Code of Civil Procedure section 909 to resolve ICWA appeals. (Compare *In re M.B.*, *supra*, 80 Cal.App.5th at pp. 627-628 ["a child protective services agency cannot remedy a defective ICWA investigation by conducting further interviews while the termination order is being reviewed on appeal"] with *In re Allison B.* (2022) 79 Cal.App.5th 214, 219 [considering such evidence because doing so has "'the beneficial consequence' of "'expedit[ing] the proceedings and promot[ing] the finality of the juvenile court's orders and judgment'"'"].)

In *In re Ricky R.* (Aug. 25, 2022, E078646) __Cal.App.4th__ [2022 Cal.App.Lexis 733], this court recently decided against considering additional evidence under Code of Civil Procedure section 909, stating that "the juvenile court should consider in the first instance whether DPSS discharged its duties under ICWA and related state law." (*In re Ricky R.*, *supra*, at p. *13.) We follow *In re Ricky R.* here and note additionally that we would find prejudice in this case even if we were to consider the social worker's affidavit. The affidavit states that the two family members actually interviewed, Mother's mother and Mother's aunt, both reported no Indian ancestry "on the maternal side of the family." There is little to no information, however, on whether M.D. might have Indian ancestry stemming from Mother's father, or the paternal side of Mother's family. There is no indication in the record that Mother's father has ever been contacted, and the same goes for Mother's two siblings. Additionally, Mother's mother told the social worker that, *to her knowledge*, there was no Indian ancestry through Mother's father, but she also told the social worker that "they have not spoken in a long time," that she does not have his contact information, and that he resides in Oklahoma.

Perhaps the best source for the uncertainty over M.D.'s possible Indian ancestry from Mother's side would have been Mother herself. It was Mother, after all, who initially informed a social worker that she had Indian ancestry before later suggesting otherwise on a form. If Mother had a good reason for this apparent inconsistency—she learned new information about her parents in the interim, for instance—then additional information may well have been unlikely to shed meaningful light on M.D.'s possible

9

Indian ancestry. (See *In re C.A.* (2018) 24 Cal.App.5th 511, 519 [duty of inquiry satisfied where a parent "initially indicated that he may have had Native American heritage [but later] explained that he had learned new information about his parents and did not have any Native American heritage"].) However, neither DPSS nor the juvenile court ever asked Mother for a possible explanation as to why her answers about Indian ancestry appear to have been inconsistent.[3]

Accordingly, we find DPSS's errors prejudicial on this record.

## III. DISPOSITION

The motion to dismiss the appeal or alternatively request judicial notice is denied. The order terminating parental rights to M.D. is conditionally affirmed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and of Welfare and Institutions Code sections 224.2 and 224.3 (and, if applicable, the notice provisions as well), consistent with this opinion. If, after completing the initial inquiry, neither DPSS nor the court has reason to believe or reason to know that M.D. is an Indian child, the order terminating parental rights will remain in effect. If DPSS or the

---

[3] Relatedly, the juvenile court never asked Mother at the detention hearing whether she knows or has reason to know that M.D. is an Indian child. (See 25 C.F.R. § 23.107(a) (2016) ["State courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record"]; *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741.) Nevertheless, appellants have not raised the apparent violation or briefed whether a violation of federal regulations under ICWA is prejudicial here, so we do not address the issue.

court has reason to believe that M.D. is an Indian child, the court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____

J.

We concur:

CODRINGTON_____

Acting P. J.

FIELDS_____

J.

11