Filed 6/20/25  In re N.R. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re N.R., a Person Coming Under the Juvenile Court Law. | B331934 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 23CCJP02061) |
| Plaintiff and Respondent, | |
| v. | |
| J.L., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark A. Davis, Judge.  Dismissed.

Sara R. Peters, by appointment of the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

J.L. (mother) appeals from the juvenile court's jurisdictional findings and dispositional orders removing her son, N.R., from her custody and placing him with his father, L.R. (father). Mother argues the trial court's jurisdictional findings were not supported by substantial evidence. Respondent Department of Children and Family Services (Department) argues the appeal has been rendered moot by a subsequent trial court order terminating jurisdiction.

We agree with the Department that subsequent events have rendered this appeal moot. Therefore, we dismiss it.

## FACTS AND PROCEDURAL BACKGROUND

On June 8, 2023, when N.R. was one year old, mother called his maternal grandmother to say that N.R. had fallen off a play slide in their living room and hurt himself. The maternal grandmother went to the home where mother lived with N.R. and father, and at some point summoned the police. Mother refused to open the door to the police. Eventually, father left work to come and open the door to the police.

N.R. proved to be unhurt, but the police took mother to mental health urgent care "due to her erratic behavior." Because father needed to work and to make arrangements for the funeral of N.R.'s recently deceased paternal grandfather, the maternal grandmother stayed at the home to watch N.R. Mother arrived at the hospital "very angry and combative" and was placed on a psychiatric hold. The situation was reported to the Department; mother was described as "incoherent" and "paranoid."

This was mother's third trip to a mental health hospital in the last five years. She was diagnosed with psychosis each time.

On June 9, 2023, a Department case worker interviewed mother at the hospital. Mother explained that she had not opened the door for the police because she was afraid they would take her to the hospital. She reported using marijuana occasionally to help with anxiety, but said she never used it in front of N.R.

Mother was released on June 11, 2023. Mother did not call any healthcare provider to schedule a follow-up visit, nor did she fill the prescription she was given. When a Department case worker interviewed her on June 13, 2023, mother said she had no need for further medical treatment or medication. After discussion between the case worker, mother, father, and the maternal grandmother, N.R. went to stay at the home of the maternal grandmother. On June 16, 2023, the trial court ordered N.R. removed from the physical custody of mother.

On June 21, 2023, the Department filed a dependency petition on behalf of N.R. under Welfare and Institutions Code section 300, subdivision (b)(1).[1] The petition contained one count and alleged first that mother's mental health issues rendered her unable to provide regular care and supervision for N.R., and second that father knew about these issues and failed to protect N.R. On August 1, 2023, the petition was amended to add a second count alleging mother had a history of drug abuse, was a current abuser of marijuana, and her drug use endangered N.R.

The trial court held its initial hearing on July 6, 2023. The Department recommended N.R. be placed in the care of father, who had separated from mother and moved in with his parents; mother would be allowed monitored

---

[1] All future statutory references are to the Welfare and Institutions Code, unless otherwise stated.

3

visitation. Mother "submit[ted] on the recommendation." The court ordered N.R. detained from mother and released to father.

The court made its jurisdictional findings and dispositional orders on August 21, 2023. The court sustained both counts against mother but dismissed the allegations against father. The court ordered N.R. placed with father; mother was granted monitored visits three times a week, three hours per visit.

Mother timely appealed.

However, on May 28, 2024, the trial court determined there was no longer any basis for jurisdiction. The court ordered the termination of jurisdiction stayed pending submission of a custody order, and directed mother and father to attend mediation to decide the terms of that order. On July 2, 2024, the court entered an order granting joint legal custody to both mother and father, directing that physical custody be divided between them according to the terms of their mediated agreement, and terminating jurisdiction. The mediated agreement gave mother custody of N.R. on weekends and Tuesday nights. Mother has separately appealed the termination order; that appeal is not presently before us.

## DISCUSSION

The Department argues mother's appeal from the jurisdictional findings has been rendered moot by the trial court's subsequent termination of jurisdiction and the implementation of the shared custody agreement. We agree, and we decline to exercise our discretion to review the merits.

I.    *Mootness*

The mootness analysis is governed by *In re D.P.* (2023) 14 Cal.5th 266 (*D.P.*).[2] A case becomes moot when subsequent events render it impossible for the court to render effective relief. (*Id.* at p. 276.) "For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*Ibid.*)

Here, mother complains of receiving a substantially smaller share of "parenting time" (i.e. physical custody) than she had before. However, subsequent events have rendered this court unable to redress that injury. When the events alleged in the Department's initial petition occurred, mother and father were living together. That is no longer true; father and mother are now separated. Mother does not argue that she would be entitled to full physical custody of N.R.; some form of shared custody is the inevitable result.

Mother suggests that, even if shared physical custody is inevitable, her share is still too small. But that smaller share was not imposed on mother by the juvenile court. It was the result of an agreement mother reached after mediation, as described above. The agreement specifies that it has been negotiated and reviewed by the parties, and requires that it be offered for review to the parties and counsel before it may be submitted to the court.

---

[2] The Department relies heavily on *In re Rashad D.* (2021) 63 Cal.App.5th 156 (*Rashad D.*), which holds that a trial court's termination of jurisdiction moots any appeal from previous orders, unless the termination order itself is appealed. This holding conflicts with other authorities (see, e.g., *In re S.G.* (2021) 71 Cal.App.5th 654, 664–665) and was implicitly called into question by the analysis in *D.P.* (*D.P., supra,* 14 Cal.5th at pp. 276–277.) But in any event, *Rashad D.* does not apply here because mother did appeal the termination order.

5

Reversal of the juvenile court's jurisdiction order would not redress mother's subsequent voluntary agreement to share physical custody on these terms.[3]

Put another way, where the juvenile court has terminated jurisdiction, an initial jurisdictional finding remains subject to review where it "forms the basis" for a decision with ongoing impact on the parent's rights. (*D.P., supra,* 14 Cal.5th at p. 276.) Here, the juvenile court's jurisdictional findings did not "form the basis" for the division of physical custody. Division of custody became inevitable once mother and father separated; it did not result from the juvenile court's assumption of jurisdiction. And the precise contours of the division were not decided by the juvenile court; they were negotiated between the parents and mother consented to them.

Because mother's own agreement forms the basis for the harm of which she complains, setting aside the juvenile court's jurisdictional findings would not provide effective relief. This appeal is moot.

II.    *Discretionary Review*

Even when a case is moot, we retain discretion to reach its merits. (*D.P., supra,* 14 Cal.5th at p. 282.) "As a rule, courts will generally exercise their discretion to review a moot case when [1] 'the case presents an issue of broad public interest that is likely to recur,' [2] 'when there may be a

---

[3]    Mother argues that reversal of the jurisdictional findings and subsequent vacatur of the custody order would allow her to go into family court and petition for a different allocation of time without the burden of showing a "significant change of circumstances" as required under section 302, subdivision (d). But mother does not explain how vacatur of the custody order would erase her custody agreement. Nor does she explain how the burden of showing a change in circumstances after a court order meaningfully differs from the burden of persuading a court to alter a voluntary agreement between the parties.

6

recurrence of the controversy between the parties,' or [3] 'when a material question remains for the court's determination.'" (*Ibid.,* quoting *Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479–480.)

Mother argues her case falls into the first category because the juvenile court's assumption of jurisdiction was based on mother's refusal to submit to a warrantless search of her home. However, mother cites nothing in the record to support that premise. In fact, the opening brief first raises the issue as a hypothetical—*if* the juvenile court based its jurisdictional findings on mother's failure to open the door to the police, mother argues, that would not be sufficient evidence to support the findings. Mother later suggests that when the Department's petition called her behavior "bizarre," and "erratic," it was referring to her denial of entry to the police. While that may have been one factor in the Department's evaluation, nothing suggests it was the sole factor, or that it was the basis for the court's decision.

However, because dependency appeals are "particularly prone to mootness problems," courts of appeal may review a moot case even when it does not fall into one of the three categories given above. (*D.P., supra,* 14 Cal.5th at p. 284.) In determining whether to do so, courts may consider such factors as the potential impact of the trial court's decision on any future legal proceedings, whether the trial court made findings of particularly pernicious or stigmatizing conduct (such as sexual abuse), and the reasons the appeal became moot. (*Id.* at pp. 285–286.) These factors "are not exhaustive, and no single factor is necessarily dispositive." (*Id.* at p. 286.)

Mother does not directly discuss these factors, and none of them weigh in favor of review. The effect of these jurisdictional findings on any future proceedings is speculative; the custody agreement, which mother entered

7

voluntarily, is more likely to be cited.  And while findings that a parent refused mental health treatment and has a history of substance abuse may be stigmatizing in other circumstances, nothing in this record suggests any extreme behavior from which mother needs to be exonerated.[4]  Finally, the appeal is moot because mother and father have separated and reached a voluntary custody agreement.  There is no reason for us to review the juvenile court findings that preceded the agreement.

## DISPOSITION

The appeal is dismissed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, Acting P. J.

WE CONCUR:


MORI, J.


GARCIA UHRIG, J.*

---

[4]     This extends to the evidence submitted; no physical harm ever came to N.R., and mother's use of drugs other than marijuana was years in the past. The primary issue here was mother's refusal to undergo treatment for her psychosis.

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section of the California Constitution.

8