Filed 7/14/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| PARKFORD OWNERS FOR A BETTER COMMUNITY, <br><br>       Plaintiff and Appellant, <br><br>   v. <br><br> JENINE WINDESHAUSEN, as County Treasurer-Tax Collector, etc., et al., <br><br>       Defendants and Respondents; <br><br> SILVERSWORD PROPERTIES, LLC, et al., <br><br>       Real Parties in Interest and Respondents. | C094419 <br><br> (Super. Ct. No. SCV0041548) |

APPEAL from a judgment of the Superior Court of Placer County, Charles D. Wachob, Judge.  Reversed with directions.

Law Office of Donald B. Mooney and Donald B. Mooney for Plaintiff and Appellant Parkford Owners for a Better Community.

Clayton T. Cook, County Counsel for Defendants and Respondents Jenine Windeshausen, as County Treasurer-Tax Collector and County of Placer.

1

Remy Moose Manley, James G. Moose, Laura M. Harris and Nathan O. George for Real Parties in Interest and Respondents Silversword Properties, K.H. Moss Company, and Moss Equity.

This is the second appeal arising out of a dispute over the operation of a commercial self-storage facility (Treelake Storage) within a planned unit development in Granite Bay (Treelake Village). Real party in interest, Silversword Properties, LLC (Silversword) owns the property upon which real parties in interest K.H. Moss Company and Moss Equity (collectively, Moss) operate Treelake Storage.

In a separate but related lawsuit filed in 2017, Parkford Owners for a Better Community (Parkford) challenged Placer County's (County) issuance of a building permit for the construction of an expansion of Treelake Storage, asserting that the County failed to comply with both the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) and the Planning and Zoning Law (Gov. Code, § 65000 et seq.). The trial court concluded: (1) the County's issuance of the building permit was ministerial rather than discretionary, and therefore CEQA did not apply; and (2) Parkford's challenge under the Planning and Zoning Law was barred by the statute of limitations. Parkford appealed, challenging each of these conclusions.

In August 2020, a different panel of this court dismissed the appeal in a published opinion, concluding that completion of the challenged expansion of Treelake Storage prior to entry of judgment rendered moot Parkford's challenge to the County's issuance of a building permit authorizing construction of the expansion. (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714 (*Parkford I*).)

Nearly a year later, in June 2021, the trial court concluded that the present lawsuit, which was filed by Parkford in 2018 and challenged the County's issuance of a business license for the operation of Treelake Storage, was barred by both aspects of the doctrine of res judicata--claim and issue preclusion. This appeal followed.

2

We conclude that *Parkford I* does not constitute a final judgment "on the merits" as defined by the applicable authority explaining what constitutes a final judgment on the merits for purposes of determining whether a new claim is barred by the law of preclusion; therefore, the doctrine of res judicata (including both claim and issue preclusion) does not operate to bar the present lawsuit. Accordingly, we will reverse the judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are set forth in greater detail in our prior published opinion, *Parkford I, supra*, 54 Cal.App.5th 714. We summarize those facts herein as relevant to provide context for the current appeal.

Treelake Storage, which is located within the Treelake Village planned unit development in Granite Bay, has been in operation for more than 20 years. (*Parkford I, supra*, 54 Cal.App.5th at p. 717.) As originally approved more than 30 years ago, Treelake Village would consist of over 1,000 residential units and various amenities, including a number of lakes and waterways, and storage for boats and recreational vehicles owned by residents of the community. (*Ibid.*) The latter amenity, to be located on a power line easement that crossed the property, would eventually become Treelake Storage. (*Ibid.*)

*Environmental Review*

In June 1987, after preparation of a final environmental impact report (EIR), a notice of determination was filed indicating the County determined that the Treelake Village development project would not have a significant effect on the environment, an EIR was prepared, and mitigation measures were made a condition of the project's approval. (*Parkford I, supra*, 54 Cal.App.5th at p. 717.)

Over a decade later, in June 1998, an addendum to the final EIR was completed. (*Parkford I, supra*, 54 Cal.App.5th at p. 717.) The addendum was prepared due to modifications to the Treelake Village Master Plan, which included increasing the

3

minimum lot size and subdividing certain parcels into smaller lots. (*Ibid.*) That September, a notice of determination was filed indicating the County determined that the modifications would not have a significant effect on the environment, an addendum to the previous EIR was prepared, and mitigation measures were made a condition of the project's approval. (*Ibid.*)

The final subdivision map for Treelake Village was recorded in April 1999. (*Parkford I, supra*, 54 Cal.App.5th at p. 717.)

*Initial Construction of Treelake Storage*

The authorization of a commercial self-storage facility within the Treelake Village development occurred through modification of the conditional use permit (CUP-1006) for the Treelake Village project. (*Parkford I, supra*, 54 Cal.App.5th at pp. 717-718.) In relevant part, condition 7 of CUP-1006 originally stated: "The following uses are among those permitted within and adjacent to the high-voltage power line easements crossing the project property. Developer shall select from his list such facilities as in his judgment best serve the project and shall provide a schedule for the review and approval by [the County's development review committee] . . . [¶] . . . [¶] (G) Recreational vehicle and boat storage for project residents only." (*Id*. at p. 718.)

In November 1993, the County Planning Department approved ministorage as an appropriate use within the power line easement. (*Parkford I, supra*, 54 Cal.App.5th at p. 718.) In the meantime, an amendment of CUP-1006 resulted in a renumbering of the conditions that caused condition 7 to become condition 8. (*Ibid.*)

In May 1996, the County Planning Commission approved a requested modification of condition 8(G) to remove the residents-only restriction on use of the planned storage facilities. (*Parkford I, supra*, 54 Cal.App.5th at p. 718.)

In August 1997, a building permit was issued for construction of Treelake Storage. (*Parkford I, supra*, 54 Cal.App.5th at p. 718.) A building permit for "Phase II" of the

4

construction was issued in September 1998.  (*Ibid*.)  After construction was completed, a certificate of occupancy was issued in November 1999.  (*Ibid*.)

*Subsequent Expansion of Treelake Storage*

In April 2001, and again in August 2004, two additional phases of construction to expand Treelake Storage's facilities were approved, and building permits were issued for each phase of expansion.  (*Parkford I, supra*, 54 Cal.App.5th at p. 718.)  Certificates of occupancy were issued in 2002 and 2005, respectively, after construction of each expansion phase was completed.  (*Ibid*.)

Finally, in August 2016, plans for the most recent expansion of Treelake Storage were approved.  (*Parkford I, supra*, 54 Cal.App.5th at p. 718.)  The building permit for this expansion was issued in October 2016; it authorized construction of a 28,240-square-foot building and associated utilities.  (*Id*. at pp. 718-719.)  After construction was completed, a certificate of occupancy was issued in October 2017.  (*Ibid*.)

*Parkford I*

In February 2017, Parkford filed a separate but related lawsuit, i.e., *Parkford I*. (*Parkford I, supra*, 54 Cal.App.5th at p. 719.)  The operative pleading challenged the County's issuance of the October 2016 building permit under CEQA and the Planning and Zoning Law and sought a writ of mandate directing the County to set aside its approval of the building permit and all related approvals, prepare and certify an adequate EIR for the expansion project, and suspend all construction activity until the County complied with CEQA and all other applicable laws.  (*Id*. at pp. 718-719.)

In April 2018, the trial court concluded that the County did not violate CEQA because the issuance of the challenged building permit was a ministerial action. (*Parkford I, supra*, 54 Cal.App.5th at p. 720.)  Thereafter, the trial court concluded that Parkford's Planning and Zoning Law claim was barred by the 90-day statute of limitations set forth in Government Code section 65009.  (*Parkford I*,  at p. 721.) Parkford appealed, challenging each of these conclusions.  (*Ibid*.)

5

*The Present Lawsuit and Prior Appellate Opinion*

Parkford filed the present lawsuit in July 2018, less than three weeks after judgment was entered against it in *Parkford I*. The operative pleading challenged the County's issuance of a business license to Treelake Storage on the ground that a ministorage facility was not an allowable use for property zoned "Residential-Ag" under the county code. Parkford asserted that Treelake Storage was operating without a valid business license because a ministorage facility was not an allowable use in residentially zoned districts, even by special permit such as a conditional use permit. Parkford sought a writ of mandate directing the County to vacate and set aside the current business license, an order declaring that the issuance of any renewals of the business license would be in violation of the county code, and a permanent injunction prohibiting the County from issuing any further renewals of the business license.

In January 2019, the trial court stayed the present lawsuit pending the outcome of the appeal in *Parkford I*. In August 2020, a panel of this court dismissed the appeal in *Parkford I*, finding that completion of the challenged expansion of Treelake Storage prior to entry of judgment rendered moot Parkford's challenge to the County's issuance of the building permit authorizing construction of the expansion. (*Parkford I, supra*, 54 Cal.App.5th at p. 725.)

After the remittitur was issued, the trial court lifted the stay of the present lawsuit in February 2021. In April 2021, Silversword and Moss (collectively, real parties in interest or real parties) filed a motion for judgment on the pleadings, which was joined by defendants the County and Jenine Windeshausen, in her official capacity as the Placer County Treasurer-Tax Collector (collectively, defendants). Real parties asserted that the present lawsuit was barred by both aspects of the doctrine of res judicata--claim and issue preclusion. As for the requirement of a final judgment on the merits, the moving papers provided no analysis of the relevant case law and simply stated in a conclusory manner that the judgment in the prior case qualified as a final judgment on the merits.

6

In response, Parkford argued (among other things) that neither claim nor issue preclusion applied because there was no final judgment on the merits, relying in part on cases we later discuss.  In reply, real parties argued that there *was* a final judgment on the merits because our prior opinion in *Parkford I* left the judgment intact when dismissing the appeal as moot, also citing cases that we later discuss in purported support of their argument.

The trial court issued a tentative decision granting the motion, which became the final order of the court.  The tentative decision did not discuss the relevant case law or explain why there was a final judgment on the merits for purposes of the law of preclusion.  The trial court's analysis in support of its decision was as follows:  "A review of the first amended petition, in conjunction with judicially noticeable documents, shows the claims are barred by the doctrines of res judicata and collateral estoppel.  [¶]  Specifically, Exhibit A shows plaintiff previously filed a writ petition against the respondents and real parties, or are in privity with the respondents, involving the same CUP permit and storage facility with the respondents and real parties prevailing in the action.  The causes of action within the two actions stem from the same primary right.  In light of this, current action is barred."

This appeal followed.[1]  Briefing was completed on February  22, 2022, and the case was assigned to a panel of this court shortly thereafter.  The panel as presently constituted was assigned in May 2022.  The parties requested oral argument, which was heard on June 24, 2022.

## DISCUSSION

Parkford contends reversal is required because the trial court erred in determining the present lawsuit is barred by the principles of claim and issue preclusion.  We agree.

---

[1] Defendants filed a joinder to real parties' appellate briefing.

Although we do not dispute that our dismissal of the appeal in *Parkford I* left the judgment of the trial court intact, we do not agree with real parties that the dismissal solely on mootness grounds resulted in a final judgment "on the merits" as required to apply the doctrine of res judicata. Due to the dismissal of the appeal, the merits of the trial court's challenged rulings in *Parkford I* evaded appellate review. Thus, as we next explain, the earlier litigation did not result in a final judgment on the merits such that application of the doctrine of res judicata is proper.

I

*The Law of Preclusion and Standard of Review*

A. *Claim and Issue Preclusion*

"The law of preclusion helps to ensure that a dispute resolved in one case is not relitigated in a later case. Although the doctrine has ancient roots [citation], its contours and associated terminology have evolved over time." (*Samara v. Matar* (2018) 5 Cal.5th 322, 326 (*Samara*).) Courts have at times used "res judicata"--"Latin for 'a thing adjudicated' "--as an umbrella term, encompassing both the primary aspect of claim preclusion and the secondary aspect of issue preclusion. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823-824 (*DKN Holdings*); *Guerrero v. Department of Corrections & Rehabilitation* (2018) 28 Cal.App.5th 1091, 1098.)

"*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*DKN Holdings, supra*, 61 Cal.4th at p. 824.) If claim preclusion is established, it operates to bar causes of action that were, or could have been, litigated in the first suit. (*Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 975; *DKN Holdings*, at p. 824.) Claim preclusion promotes judicial economy and avoids piecemeal litigation by preventing a plaintiff from " ' "splitting a single cause of action or relitigat[ing] the same cause of

8

action on a different legal theory or for different relief." ' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897.)

"*Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action.  [Citation.]  Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action.  [Citation.]  There is a limit to the reach of issue preclusion, however. In accordance with due process, it can be asserted only against a party to the first lawsuit, or one in privity with a party."  (*DKN Holdings, supra*, 61 Cal.4th at p. 824.) Issue preclusion applies only:  " '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.' "  (*Samara, supra*, 5 Cal.5th at p. 327; *DKN Holdings*, at p. 825.)  "Courts have understood the ' "necessarily decided" ' prong to 'require[] only that the issue not have been "entirely unnecessary" to the judgment in the initial proceeding' [citation]—leaving room for a decision based on two grounds to be preclusive as to both."  (*Samara*, at p. 327.)

Whether claim or issue preclusion applies in a particular case is a question of law. (*Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1325.)

B.  *Standard of Review*

"In an appeal from a motion granting judgment on the pleadings, we accept as true the facts alleged in the complaint and review the legal issues de novo.  'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the [operative pleading], supplemented by any matter of which the trial court takes judicial notice, to determine whether [the party] has stated a cause of action.  [Citation.]  Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the truth of all material facts properly pled.' "  (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166.)

9

II

*Analysis*

A. *Forfeiture*

We first reject real parties' initial contention that Parkford has forfeited its appellate arguments by failing to request a statement of decision or challenge the trial court's tentative ruling. A party's "[s]ubmission on a tentative ruling is neutral; it conveys neither agreement nor disagreement with the analysis." (*Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1406.) On appeal, Parkford asserts error as to legal issues that were briefed by the parties and specifically addressed in the tentative ruling. We find no merit in real parties' suggestion that a party must object to a tentative ruling and reiterate every rejected argument in order to preserve those arguments on appeal. (See *Schulz v. Jeppesen Sanderson, Inc.* (2018) 27 Cal.App.5th 1167, 1179-1180 [finding no such requirement with regard to a statement of decision].) Further, we find real parties' reliance on *Old East Davis Neighborhood Assn. v. City of Davis* (2021) 73 Cal.App.5th 895 and *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, misplaced. Both of those cases are clearly distinguishable. (See *Old East Davis*, at pp. 911-912 [failure to request a ruling on contentions the trial court *expressly declined to reach* in tentative ruling results in forfeiture of contentions on appeal]; *Porterville*, at pp. 911-912 [failure to object to tentative ruling or otherwise alert trial court of its *failure to expressly rule on an issue* results in forfeiture of issue on appeal].)

B. *Final Judgment for Purposes of Application of the Doctrine of Res Judicata*

We next conclude that the dismissal of the appeal in *Parkford I* on the ground of mootness did not constitute a final judgment "on the merits" for the purpose of applying the doctrine of res judicata. Thus, the trial court erred in determining that the present lawsuit is barred by the principles of claim and issue preclusion and reversal is required.

10

As noted *ante*, claim preclusion requires a final judgment on the merits, while issue preclusion requires a final adjudication of an issue. (*Samara, supra*, 5 Cal.5th at p. 327; *DKN Holdings, supra*, 61 Cal.4th at pp. 824-825.) A judgment or adjudication is on the merits if the substance of the claim or issue is tried and determined. (See *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 77; *Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 325; *Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1203.) A trial court judgment determined to be moot on appeal and dismissed has not been fully litigated, as appellate review of the merits was never completed. (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 943.)

As set forth *ante*, in *Parkford I* the trial court concluded that the County did not violate CEQA because the issuance of the challenged building permit was a ministerial action. (*Parkford I, supra*, 54 Cal.App.5th at p. 720.) The trial court further concluded that Parkford's Planning and Zoning Law claim was barred by the 90-day statute of limitations set forth in Government Code section 65009. (*Parkford I*, at p. 721.) In reaching these conclusions, the trial court did not determine whether Parkford's claims were moot due to the completion of the most recent expansion of Treelake Storage, as argued by real parties and defendants. (*Id.* at pp. 720-721.) However, an appeal challenging the trial court's conclusions was filed by Parkford and ultimately decided by this court solely on the ground of mootness (see *id.* at pp. 722-725), a purely procedural or technical ground that is distinct from an actual determination of the merits. (See *Assn. of Irritated Residents v. Dept. of Conservation* (2017) 11 Cal.App.5th 1202, 1220, 1224 [action dismissed due to mootness is not on the merits].) Accordingly, because the appeal in *Parkford I* was not disposed of "on the merits," neither claim nor issue preclusion apply. (See *id.* at p. 1226 [claim preclusion does not apply when prior judgment is based on the ground of mootness].)

11

We find unpersuasive real parties' contention that the judgment in *Parkford I* "remains 'on the merits' despite dismissal of the appeal as moot." In support of their position, real parties cite cases standing for the proposition that the involuntary dismissal of an appeal normally leaves the judgment intact (see e.g., *In re Jasmon O.* (1994) 8 Cal.4th 398, 413), and that if an appellate court wishes to avoid this result, "it can do so by reversing the judgment solely for the purpose of restoring the matter to the jurisdiction of the superior court with directions for that court to dismiss the action," as "[t]his approach disposes of the case, not merely the proceeding that brought it to the appellate court." (*County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1005, citing *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134 (*Paul*) [describing limited reversal procedure].) We do not disagree with this basic proposition; here the original judgment remains intact despite the dismissal of the appeal in *Parkford I*. However, that is not the dispositive question in this case. As we have explained, the question we must answer in this appeal is whether the judgment is final "on the merits" for purposes of res judicata, where the merits of the trial court's rulings evaded appellate review despite their being argued on appeal. Simply put, an appeal was taken that challenged trial court rulings, but the validity of those rulings was never adjudicated on appeal.

At oral argument, counsel for real parties argued that he specifically asked the *Parkford I* panel to affirm the judgment and dismiss only the appeal in that case. We do not dispute that this approach was requested by counsel both in the briefing and at oral argument in *Parkford I*. However, the *Parkford I* panel did *not* explicitly affirm the judgment on its merits when it dismissed the appeal as moot. This disposition resulted in the trial court's judgment remaining intact; however, as we have explained, that is not the dispositive issue here. We reject the real parties' suggestion that the judgment in *Parkford I* has preclusive effect because this court, in disposing of the appeal in that case, did not follow the procedure described by our Supreme Court in *Paul*, *supra*, 62 Cal.2d at page 134. First, *Paul* was not a preclusion case. Second, in *Paul*, the regulation that was

12

found unconstitutional by the trial court had been superseded by a new regulation. (*Paul*, *supra*, 62 Cal.2d at pp. 131-132, 134.) Under those circumstances, "since the basis for that judgment has now disappeared," our Supreme Court found it proper to reverse the judgment and remand with directions to dismiss the proceeding in order to avoid " 'impliedly' affirming" a judgment holding a regulation unconstitutional. (*Id*. at p. 134.) *Paul* did not hold that absent a similar disposition, a dismissal for mootness results in appellate affirmance of the underlying judgment "on the merits" for purposes of res judicata. In short, *Paul* does not establish that judgment in *Parkford I* has preclusive effect in subsequent litigation.

Our conclusion is consistent with our Supreme Court's recent decision in *Samara*. There, our high court held that, for purposes of the law of preclusion, "a ground reached by the trial court and properly challenged on appeal, but not embraced by the appellate court's decision, should not affect the judgment's preclusive effect." (*Samara, supra*, 5 Cal.5th at p. 334.) Instead, the preclusive effect of the judgment should be evaluated as though the trial court had not reached the issue that the appellate court did not reach. (*Id*. at pp. 326, 334, 338 [refusing to give preclusive effect to a merits-based trial court determination that evaded appellate review, explaining that this "approach aligns far better with the recognition that although trial court decisions are often thorough, thoughtful, and correct, litigants should be afforded more procedural fairness before being bound by all aspects of a trial court's challenged determination"].)[2]

---

[2] We note that the *Samara* court identified a limitation on its holding: "We caution . . . that we take no position on the significance of an independently sufficient alternative ground reached by the trial court and *not* challenged on appeal." (*Samara, supra*, 5 Cal.5th at p. 337.) Our Supreme Court made this cautionary comment after explaining that "[c]ourts have understood the ' "necessarily decided" ' prong to 'require[] only that the issue not have been "entirely unnecessary" to the judgment in the initial proceeding' [citation]—leaving room for a decision based on two grounds to be preclusive as to both." (*Id*. at p. 327)

In *Samara*, our Supreme Court overruled *People v. Skidmore* (1865) 27 Cal. 287, which gave preclusive effect to a trial court determination that evaded appellate review, and disapproved its progeny, such as *Bank of America v. McLaughlin Land & Livestock Co.* (1940) 40 Cal.App.2d 620. (*Samara, supra*, 5 Cal.5th at pp. 329-330, 337-338.) In doing so, the *Samara* court rejected the so-called traditional rule announced in *Skidmore* and followed the modern rule expressed in the Second Restatement. (*Samara*, at pp. 331-338.) This was in accord with more recent appellate court authority. (See *Newport Beach Country Club, Inc. v. Founding Members of Newport Beach Country Club* (2006) 140 Cal.App.4th 1120, 1123, 1126-1132 [rejecting *Skidmore* and following the modern or Second Restatement rule, which provides that " ' "[i]f the appellant [*sic*] court upholds one of [two] determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is [only] conclusive as to the first determination" ' "]; see also *Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 83-85; *Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1446-1447, 1460.) In concluding that neither claim nor issue preclusion applied, the *Samara* court assumed, without deciding its correctness, that a decision on timeliness grounds (i.e., statute of limitations) is not a decision on the merits for purposes of the law of preclusion. (*Samara*, at p. 338 [noting that the issue was undisputed].) Thus, where, as here, an appellate court disposes of an appeal solely on a procedural or technical ground that does not reach the merits of the underlying controversy, such as mootness, the judgment does not have preclusive effect in subsequent litigation. (See *ibid.* [holding that neither claim nor issue preclusion apply where the trial court rules on both the merits and a procedural ground in the first suit, but the appellate court affirms based solely on the procedural ground, because it is not "a 'final judgment on the merits,' " as the merits were not " 'necessarily decided in the first suit,' or even 'decided' at all"].)

Other authority decided prior to *Samara* agrees that a judgment becoming final after an appeal is dismissed as moot does not have preclusive effect in a subsequent

14

action because the judgment does not constitute a final judgment "on the merits" of the controversy. (*Chamberlin v. City of Palo Alto* (1986) 186 Cal.App.3d 181, 187; see also *Minor v. Lapp* (1963) 220 Cal.App.2d 582, 584; Rest.2d Judgments (1982) § 28.) This authority is consistent with *Samara*, and we agree with it. Real parties' attempts to distinguish these cases are not persuasive.

We acknowledge that one appellate court appears to have disagreed as to whether such a judgment may be considered a final judgment "on the merits" for purposes of the law of preclusion. (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1016-1018 [concluding that the dismissal of an appeal on the ground of mootness that was not made without prejudice results in a final judgment for purposes of claim preclusion].) Real parties relied on *Lyons* in the trial court and also in their briefing on this appeal. Our reading of *Lyons* indicates that although the *Lyons* court purported to find the judgment final for purposes of res judicata, its analysis (including its attempts to distinguish *Chamberlin v. City of Palo Alto, supra,* 186 Cal.App.3d at page 187 and *Minor v. Lapp, supra,* 220 Cal.App.2d at page 584) centers on the issue of finality of a trial court judgment in general. The relevant portion of the opinion does not distinguish or even reference the "on the merits" requirement of res judicata, and expresses disagreement with a hypothetical argument that dismissal of an appeal based on mootness precludes a judgment from ever becoming final. (*Lyons*, at p. 1018.) As we have explained *ante*, the lack of finality on the merits for purposes of application of the doctrine of res judicata is not the same thing as the lack of a final judgment in any given case or controversy. In any event, *Lyons* predates *Samara* and, to the extent *Lyons* supports the real parties' contention that *Parkford I* constitutes a final judgment "on the merits," we decline to follow it for the reasons previously stated.

15

In sum, we conclude that the present lawsuit is not barred by the law of preclusion. Neither claim nor issue preclusion apply because *Parkford I* does not constitute a final judgment "on the merits." Indeed, no merits-based determination was made in *Parkford I*, as the appeal in that case was dismissed on the ground of mootness.[3]

## DISPOSITION

The judgment is reversed. The trial court shall vacate the order denying Parkford's first amended petition for writ of mandate and enter an order denying the motion for judgment on the pleadings filed by real parties in interest and joined by defendants. Parkford shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)


/s/
Duarte, J.

We concur:


/s/
Robie, Acting P. J.


/s/
Earl, J.

---

[3] In light of our conclusions, we need not and do not consider the parties' remaining arguments.